James E. Torgerson (Bar No. 8509120)
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone: (907) 263-8404
Facsimile: (907) 277-1920
jim.torgerson@stoel.com

Jonathan W. Rauchway (*pro hac vice pending*)
Shannon Wells Stevenson (*pro hac vice pending*)
Kristin L. Arthur (*pro hac vice pending*)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
jon.rauchway@dgslaw.com
shannon.stevenson@dgslaw.com
kristin.arthur@dgslaw.com

Attorneys for Plaintiffs Maverix Metals Inc.
and Maverix Metals (Nevada) Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MAVERIX METALS INC., a Canadian corporation and MAVERIX METALS (NEVADA) INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>COUER ALASKA, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:21-cv-00021-SLG |

*Maverix Metals Inc., et al. . v. Couer Alaska, Inc.*
Case No. 1:21-cv-00021-SLG            1
STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

# COMPLAINT AND JURY DEMAND

For their Complaint against Coeur Alaska, Inc. ("Coeur" or "Defendant"), Maverix Metals Inc. ("MMI") and Maverix Metals (Nevada) Inc. ("MMN") (collectively with MMI, "Maverix" or "Plaintiffs"), allege as follows:

## INTRODUCTION

1. Coeur operates the Kensington gold mine outside of Juneau, Alaska. Pursuant to a royalty deed, Coeur is obligated to pay Maverix royalties on gold produced from Kensington once Coeur has recouped $32.5 million plus "Coeur's Construction Investment," as defined in the Royalty Deed. The amount of $32.5 million and Coeur's Construction Investment are collectively referred to as "Recoupment" in the Royalty Deed.

2. The Royalty Deed provides that Coeur's Construction Investment can include only specific costs and expenditures for the exploration, development and construction of the Kensington gold mine that are "determined in accordance with generally accepted account principles for metallic mining ventures within the United States applied on a consistent basis (hereinafter 'GAAP')" (Ex. A at 2), incurred within specific time periods, and "attributable to the development and operation of the 'Properties'" (*Id.* at 4). The specific costs and expenditures are exploration and development costs and direct capital costs for the construction of the mine incurred after the effective date of the Royalty Deed but prior to the commencement of commercial production, and operating costs incurred after the commencement of commercial production but prior to Recoupment.

3. In mid-2020, based on Coeur's own financial statements and the methodology being used by Coeur to calculate Coeur's Construction Investment, Maverix informed Coeur that it would reach Recoupment within three years and would be obligated to start paying Maverix's royalty at that time. In response, Coeur sent Maverix a "revised" statement adding over $158 million in exploration and development costs and other expenses Coeur claims to have incurred *over the previous ten years after the commencement of commercial production but not previously included on any statements*.

4. Coeur now contends it is entitled to recoup all of the costs in its "revised" recoupment statement before paying any royalties to Maverix. In other words, after being informed that its royalty obligation was about to become payable, Coeur retroactively altered the records and methodology applicable to the recoupment statements to avoid its contractual obligation to pay royalties to Maverix.

5. Coeur's addition of purported exploration and development costs after the commencement of commercial production and corresponding revision of the recoupment statement violate the terms of the Royalty Deed and were made in bad faith. Maverix therefore brings this lawsuit to recover damages it has sustained from Coeur's improper conduct and breaches of the Royalty Deed. Maverix also seeks a declaratory judgment to establish the appropriate costs to be included in the recoupment calculation and the proper method for performing the recoupment calculation.

## PARTIES

6. MMI is a corporation incorporated under the laws of Canada with a principal place of business at 510 Burrard Street, Suite 575, Vancouver, British Columbia, V6C 3A8, Canada.

7. MMN is a corporation incorporated under the laws of Nevada with a principal place of business at 250 Park Avenue, 7th Floor, New York, New York 10177.

8. Coeur is a corporation incorporated under the laws of Delaware with a principal place of business at 104 S. Michigan Avenue, Chicago, Illinois 60603, and a mailing address of 3031 Clinton Drive, Suite 202, Juneau, Alaska 99801.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because Maverix and Coeur have diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as this action concerns royalty interests in an Alaskan gold mine located in this district.

## FACTUAL ALLEGATIONS

**A.  The Royalty Deed**

11. Coeur is a mining company that mines gold from a group of properties located about 45 miles north of Juneau, Alaska ("Kensington" or "the Properties").

12. Echo Bay Exploration, Inc. ("Echo Bay") is a subsidiary of Kinross Gold Corporation, a third-party mining company.

13. In 1995, Coeur and Echo Bay executed a Royalty Deed for the Properties. A true and correct copy of the Royalty Deed is attached hereto as **Exhibit A**. The Royalty Deed is governed by Alaska law.

14. The Royalty Deed entitled Echo Bay to "a Net Returns Royalty interest in 100% of gold produced from the Properties to a maximum of 1,000,000 troy ounces of gold." (Ex. A at 1.)

15. Echo Bay would begin receiving royalty payments as soon as Coeur reached "Recoupment," which the Royalty Deed defines as (1) the sum of $32,500,000, plus (2) Coeur's Construction Investment.

16. The Royalty Deed defines "Coeur's Construction Investment" as specific "expenditures determined in accordance with generally accepted accounting principles for metallic mining ventures within the United States applied on a consistent basis (hereinafter 'GAAP')." (Ex. A at 2.)

17. In defining "Coeur's Construction Investment," the Royalty Deed distinguishes between expenditures incurred prior to the commencement of commercial production from the Properties, and those incurred after commencement of commercial production but prior to Recoupment. (Ex. A at 2-4.)

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

18. Prior to the commencement of commercial production, Coeur was permitted to include "direct capital costs for the construction of a mine and processing facility on the Properties," and certain exploration and development costs "with respect to exploring and developing the Properties" when calculating "Coeur's Construction Investment". (Ex. A at 2, 4.)

19. After the commencement of commercial production, "Coeur's Construction Investment" consisted of operating costs, including mining costs, milling and processing costs, general and administrative costs, selling costs, and certain taxes. (Ex. A at 3-4.)

20. The Royalty Deed also noted that when "costs otherwise includible in Coeur's Construction Investment are incurred partly for the benefit of any other properties or interests of Coeur, only the portion of such costs reasonably attributable to development and operation of the Properties in accordance with GAAP shall be included in Coeur's Construction Investment." (Ex. A at 4.)

21. Coeur was obligated under the Royalty Deed to provide quarterly statements to Echo Bay both prior to and after commencement of commercial production (hereinafter "Recoupment Statements"). (Ex. A at 5.)

22. Prior to commencement of commercial production, Coeur was required to provide Echo Bay with Recoupment Statements that provide "a detailed account, certified by Coeur's chief financial officer, of all costs included in the accrual of Coeur's

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

Construction Investment during that quarter." The Recoupment Statements must be provided "[b]y the 30th day after each calendar quarter." (Ex. A at 5.)

23. After the commencement of commercial production, but before reaching Recoupment, Coeur was required to provide Echo Bay with Recoupment Statements that provide "detailed quarterly accounts by the 30th day following each calendar quarter, certified by Coeur's chief financial officer, showing the amounts and basis of credits toward Recoupment until Recoupment is achieved." (Ex. A at 5.)

24. Coeur was also required to notify Echo Bay that commercial production had begun within 30 days of commencement of commercial production. (Ex. A at 5.)

25. Commercial production commenced at the Kensington Mine in July 2010.

26. Coeur failed to provide Echo Bay with a single Recoupment Statement prior to commencement of commercial production.

27. Coeur failed to inform Echo Bay that commercial production had commenced.

28. Coeur failed to provide Echo Bay with any Recoupment Statement until August 2017.

**B.   Coeur's Recoupment Statements**

29. In August 2017, Echo Bay notified Coeur of its noncompliance with the Royalty Deed and Coeur provided the first quarterly Recoupment Statement to Echo Bay, for the second quarter of 2017 ("Original 2017 Q2 Statement").

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

30. The Original 2017 Q2 Statement showed that the amount left until Recoupment was $385,812,549. A true and correct copy of that statement is attached hereto as **Exhibit B**.

31. Upon receipt of the Original 2017 Q2 Statement, Echo Bay requested that Coeur explain its methodology for calculating Coeur's Construction Investment in the Original 2017 Q2 Statement.

32. In response to Echo Bay's request, Coeur provided an "updated" calculation, because Coeur had erroneously "doubled up on the pre-commercial production costs." A true and correct copy of Coeur's email transmitting the updated calculation is attached hereto as **Exhibit C**.

33. In this revised Recoupment Statement ("Revised 2017 Q2 Statement"), the amount remaining until Recoupment was $298,640,322. A true and correct copy of the Revised 2017 Q2 Statement is attached hereto as **Exhibit D**.

34. Coeur continued to provide quarterly Recoupment Statements to Echo Bay with no further modifications being requested or proposed by either party to the calculations used to produce the statements.

35. According to Coeur's Recoupment Statement for the third quarter of 2019, the amount left until Recoupment was $235,905,712 (the "2019 Q3 Recoupment Statement"). A true and correct copy of the 2019 Q3 Recoupment Statement is attached hereto as **Exhibit E**.

## C.     Maverix Purchases the Royalty

36.     Under the Royalty Deed, Echo Bay was free to "assign or encumber its Net Returns Royalty and its rights under [the] Royalty Deed." (Ex. A at 10.)

37.     Coeur understood that the Royalty Deed was freely assignable by Echo Bay.

38.     In December 2019, Maverix purchased Echo Bay's royalty interest, and Echo Bay assigned to Maverix its rights under the Royalty Deed.

39.     Prior to purchasing the royalty interest, Maverix reviewed the Recoupment Statements that Coeur had previously provided to Echo Bay.

40.     Maverix relied on the accuracy of Coeur's Recoupment Statements in purchasing the royalty interest.

41.     In March 2020, Maverix requested supporting calculations for Coeur's Construction Investment to date. Coeur provided these, as well as the 2019 Q4 Recoupment Statement, which showed that the amount remaining until Recoupment was $225,683,596. Coeur arrived at this number by using the same underlying methodology and calculations that Coeur had used since the Revised 2017 Q2 Statement. A true and correct copy of the 2019 Q4 Recoupment Statement is attached hereto as **Exhibit F**.

42.     Coeur did not provide Maverix with a 2020 Q1 Recoupment Statement.

43.     Coeur provided Maverix with a 2020 Q2 Recoupment Statement, which showed the amount remaining until recoupment was $188,971,581. Coeur arrived at this

*Maverix Metals Inc., et al. . v. Couer Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                    9

number by using the same underlying methodology and calculations that Coeur had used since the Revised 2017 Q2 Statement. A true and correct copy of the 2020 Q2 Recoupment Statement is attached hereto as **Exhibit G**.

D. **Coeur Unilaterally Increases the Amount Remaining to Reach Recoupment**

44. In July 2020, Maverix informed Coeur that, based on its analysis of the Recoupment Statements to date, Recoupment would be achieved in three years.

45. In August 2020, Coeur responded that it "need[ed] to clarify something on the calculation we have been sending."

46. Three months later, Coeur sent Maverix the 2020 Q3 Recoupment Statement. In it, Coeur recalculated its Construction Investment for the 2020 Q3 Recoupment Statement, so that the amount remaining until Recoupment nearly doubled to $330,698,923. A true and correct copy of the 2020 Q3 Recoupment Statement is attached hereto as **Exhibit H**.

47. Coeur increased the amount remaining until Recoupment by increasing the amount of its Construction Investment, specifically, adding purported costs to its post-commercial production exploration and development costs. Some of these purported costs dated back to 2010.

48. In total, Coeur added to the 2020 Q3 Recoupment Statement over $158 million in exploration and development costs and taxes it claimed to have incurred since 2010.

49. Included in the Construction Investment are costs Coeur incurred that benefit other properties, specifically the Jualin deposit, which is not part of the Properties subject to the Royalty Deed.

50. Maverix demanded an explanation for Coeur's unilateral revision of the Recoupment Statement, and specifically, Coeur's addition of over $158 million in costs and taxes it claimed to have incurred after commencement of commercial production over the previous decade.

51. Coeur responded that "it had been applying an incorrect standard to the Royalty" for years, but that it had been prompted to reexamine its calculation of the Royalty by "the change in ownership of the Royalty and recent increases in the price of gold."

## CLAIM 1
### (Breach of Contract)

52. Maverix realleges and incorporates its allegations contained in the preceding paragraphs as though fully set forth herein.

53. Echo Bay and Coeur entered into the Royalty Deed on July 7, 1995.

54. The Royalty Deed contains a binding and enforceable contract to pay royalties.

55. Echo Bay performed its obligations under the Royalty Deed.

56. Maverix subsequently purchased Echo Bay's royalty interest under the Royalty Deed, and Echo Bay assigned to Maverix its rights under the Royalty Deed.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

57. Maverix performed its obligations under the Royalty Deed.

58. Coeur materially breached its obligations under the Royalty Deed. Coeur's breaches include, without limitation, increasing its calculation of its Construction Investment by retroactively adding costs disallowed by the Royalty Deed, computed in violation of GAAP, and/or incurred for the benefit of other properties that are not subject to the Royalty Deed.

59. Coeur's breaches of contract directly and proximately caused damages to Maverix in an amount to be proven at trial.

## CLAIM 2
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

60. Maverix realleges and incorporates its allegations contained in the preceding paragraphs as though fully set forth herein.

61. Under Alaska law, every contract contains an implied covenant of good faith and fair dealing.

62. The Royalty Deed contains a binding and enforceable contract to pay royalties.

63. The implied covenant of good faith and fair dealing requires that neither party to a contract do anything that will injure the rights of the other party to receive the benefits of the contract, and that each contracting party will act in a manner that a reasonable person would regard as fair.

*Maverix Metals Inc., et al. . v. Couer Alaska, Inc.*
Case No. 1:21-cv-00021-SLG     12

64. On information and belief, Coeur took the actions described above in order to avoid its obligations to Maverix as the holder of the royalty interest and Maverix's other rights under the Royalty Deed.

65. In doing so, Coeur breached its implied covenant of good faith and fair dealing to Maverix under the Royalty Deed.

66. Coeur's failure to act in good faith was a breach of the implied covenant of good faith and fair dealing that directly and proximately caused damages to Maverix in an amount to be proven at trial.

## CLAIM 3
**(Negligent Misrepresentation, pleaded in the alternative)**

67. Maverix realleges and incorporates its allegations contained in the preceding paragraphs as though fully set forth herein.

68. Coeur provided information regarding the Recoupment balance in the course of its business.

69. Based on the "clarification" of the Recoupment balance that Coeur provided in late 2020, the information it previously provided regarding the Recoupment balance was false.

70. Maverix justifiably relied on the information provided by Coeur before December 2019 in deciding to purchase Echo Bay's royalty interest under the Royalty Deed.

71. In supplying this information, Coeur failed to exercise reasonable care or competence in obtaining or communicating the information.

72. As a direct and proximate result of Coeur's misrepresentations, Maverix suffered damages in an amount to be proven at trial.

## CLAIM 4
### (Declaratory Judgment under 28 U.S.C. § 2201)

73. Maverix realleges and incorporates its allegations contained in the preceding paragraphs as though fully set forth herein.

74. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in a case of actual controversy, a court may declare the rights and other legal relations of any interested party seeking such a declaration.

75. This dispute is ripe for adjudication because there exists an actual, present, and justiciable controversy between Maverix and Coeur concerning the interpretation of the Royalty Deed, what costs may be included in Coeur's Construction Investment, and Coeur's Recoupment calculation.

76. Maverix and Coeur have each stated opposing views concerning the interpretation of the Royalty Deed, what costs may be included in Coeur's Construction Investment, and Coeur's Recoupment calculation and, consequently, the amount left until Coeur reaches Recoupment.

77. This controversy is neither remote nor speculative and has measurable financial consequences.

*Maverix Metals Inc., et al. . v. Couer Alaska, Inc.*
Case No. 1:21-cv-00021-SLG 14

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

78. Absent a judicial declaration setting forth the parties' rights, duties, and obligations with respect to this controversy, multiple legal actions may result.

79. The issues raised herein have not been raised in other litigation and are appropriately resolved in this action.

80. Accordingly, Maverix is entitled to a declaration concerning the interpretation of the Royalty Deed, and specifically, what costs may be included in Coeur's Construction Investment, the appropriate method for Coeur's Recoupment calculation, and the amount left until Coeur reaches Recoupment.

## **PRAYER FOR RELIEF**

WHEREFORE, Maverix, on its own behalf and as successor to the rights of Echo Bay, asks for the following relief:

A judgment awarding compensatory damages in favor of Maverix in an amount to be proven at trial;

A judgment declaring the rights and obligations of the parties under the Royalty Deed;

Prejudgment and post-judgment interest;

An award of costs and attorneys' fees, including attorneys' fees under Alaska R. Civ. P. 82, to Maverix; and

Other and further relief to which Maverix may be entitled upon the final adjudication of this action.

*Maverix Metals Inc., et al. . v. Couer Alaska, Inc.*
Case No. 1:21-cv-00021-SLG         15

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

## JURY DEMAND

Maverix demands a jury on all issues so triable.

DATED: December 2, 2021

STOEL RIVES LLP

By: /s/ James E. Torgerson
    JAMES E. TORGERSON (Bar No. 0810062)

DAVIS GRAHAM & STUBBS LLP
    Jonathan W. Rauchway (*Pro Hac Vice Pending*)
    Shannon Wells Stevenson (*Pro Hac Vice Pending*)
    Kristin L. Arthur (*Pro Hac Vice Pending)*

*Attorneys for Plaintiffs Maverix Metals Inc.*
*and Maverix Metals (Nevada) Inc.*