Michael A. Grisham, ABA #9411104
grisham.michael@dorsey.com
Nathan Bishop, NA20777
bishop.nathan@dorsey.com
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Attorneys for Defendant and
Cross-Claimant
COEUR ALASKA, INC.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

## UNITED STATES DISTRICT COURT
### FOR THE STATE OF ALASKA

| | |
|---|---|
| MAVERIX METALS INC., a Canadian corporation, *et al.,*<br><br>Plaintiff,<br><br>vs.<br><br>COEUR ALASKA, INC., a Delaware corporation,<br><br>Defendants. | Case No. 1:21-cv-00021-SLG<br><br><br><br>**MOTION FOR SUMMARY JUDGMENT** |
| COEUR ALASKA, INC., a Delaware corporation,<br><br>Cross-Claimant<br><br>vs.<br><br>MAVERIX METALS (NEVADA) INC., a Nevada corporation,<br><br>Counter-Defendant | |

Motion for Summary Judgment

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

4886-2647-3799\1

Defendant and Cross-Claimant Coeur Alaska, Inc., ("Coeur") hereby moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in its favor and against Plaintiff and Counter-Defendant Maverix Metals, Inc., ("Maverix") on Maverix's bad faith and misrepresentation claims and on Coeur's contract interpretation claim.

## I. INTRODUCTION

This is a straightforward contract interpretation case regarding a mining royalty deed contract (the "Royalty Deed") for the Kensington gold mine near the Lynn Canal north of Juneau ("Kensington"). Under the Royalty Deed, Coeur is obligated to pay the deed-holder a royalty on gold production from Kensington, but only after Coeur recoups its investment, including the $32.5 million purchase price, Coeur's pre-production exploration, construction and development expenditures, and certain ongoing costs incurred after commercial production has started.[1] Maverix's dispute centers on whether and in what amount the Royalty Deed allows Coeur to recoup exploration and development expenses incurred after the start of commercial production, and on the propriety of Coeur's accounting for expenses related to infrastructure that is presently shared with other mines in areas not covered by the Royalty Deed.[2]

The plain language of the Royalty Deed supports Coeur in this case. The Royalty Deed expressly allows Coeur, prior to making any royalty payments, to recoup certain

---

[1] *See* Declaration of Counsel In Support of Motion for Partial Summary Judgment ("Counsel Decl."), Exh. A (Royalty Deed). The royalty ranges from 1% of net smelter returns at $400 gold prices to a maximum of 2½% at gold prices above $475, with the royalty to be capped at 1.0 million troy ounces of production. *Id*.

[2] There is no dispute regarding the accuracy of the expenses reported by Coeur or regarding the sufficiency of the accounting information provided by Coeur.

Motion for Summary Judgment
Page 1 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 2 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

expenses incurred after the Commencement of Commercial Production at Kensington, including expenses "incurred by Coeur in *exploring for* … Gold Minerals produced from the Properties," and other "mining costs," including "exploration drilling" and "developmental or ore delineation drilling" that include Coeur's claimed development expenses.[3] Coeur's position is also supported by a common-sense understanding of the way mining works. Ongoing exploration and development is and always has been essential to the Kensington Mine's viability, and it benefits both parties. In fact, Coeur's exploration and development work is the only reason the Kensington Mine has not already played out – it led to the identification of the reserves Coeur is presently mining – and so is the only reason Maverix or its predecessors have ever had any hope of receiving any royalty payments at all. It is thus fair and reasonable that Coeur be allowed to recoup these fundamental investments in the Kensington Mine prior to paying a royalty. Maverix's interpretation of the Royalty Deed would give it a windfall: Maverix would retain the benefits of Coeur's significant ongoing exploration and development expenses, but Coeur would bear the full cost and so potentially absorb a significant loss at the mine.

The plain language of the contract also supports Coeur's position regarding the allocation of infrastructure construction expenses. The Kensington Mine is the primary mine at the site, with over 90% of the production to date and the greatest exploration potential. Coeur has been developing Kensington since 1995, and at the time the

---

[3] *Id.* at MAVERIX0000711. The "Commencement of Commercial Production" is essentially when Coeur had sufficiently developed Kensington to start long-term uninterrupted production of gold. *Id.*

Motion for Summary Judgment
Page 2 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 3 of 36
4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

infrastructure at issue was built Kensington was the only prospect with proven reserves and the only mine actually under construction. The sole intent of that construction was thus necessarily to benefit Kensington, and so the construction expenses were properly allocated to Kensington. Although Coeur started years later to use this infrastructure (in small part) for other mines, there is nothing in the Royalty Deed that requires Coeur to look back at its previous accounting and re-state its allocation of expenses based on developments that took place years later.

Maverix's bad faith and misrepresentation claims are also without merit. The bad faith claim is litigation posturing; an effort to manufacture an appearance of greater substance and equity for Maverix's contract arguments. The misrepresentation claim also fails, as Maverix cannot as a matter of law demonstrate actual, reasonable, or justifiable reliance on any misstatements.

Coeur is entitled as a matter of law to judgment in its favor on its contract interpretation claims and against Maverix on its claims.

## II.   BACKGROUND

### A.   A brief history of the Kensington mine.

The Kensington Mine is an underground gold mining operation located on the east side of the Lynn Canal, approximately 48 miles north-northwest of Juneau, Alaska.[4] The mine is accessible only by boat, helicopter, or floatplane.[5] Kensington includes a number

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

---

[4] Counsel Decl., Exh. B at MAVERIX0012978.
[5] *Id*.

Motion for Summary Judgment
Page 3 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 4 of 36
4886-2647-3799\1

of different patented and unpatented claims, referred to as the Kensington Properties.[6]

Mining operations in the Kensington area have been ongoing since the Gold Rush era.[7] Modern underground exploration work started in the 1980s. In 1987 Coeur formed the Kensington Joint Venture with Echo Bay Mines ("Echo Bay") to acquire and operate the Properties.[8] In 1993, Coeur and Echo Bay completed a feasibility study for the underground mine.[9] In 1995, Coeur bought out Echo Bay's interest, giving Coeur control over the mine in exchange for the Royalty Deed at issue here.[10] Coeur then began the technical work necessary to develop Kensington, including engineering, additional exploration, and permitting, which proceeded over the course of the next decade.[11]

As Coeur has noted in its Technical Reports, the Kensington "Project area is a target-rich environment,"[12] and the significant exploration potential in the area factored into the decision to undertake the significant expense of developing a modern underground mine at such a remote site. Coeur is active at several deposits in the Kensington area, with mining presently underway at the Kensington Main and Raven deposits (on the Kensington Properties) and the Jualin deposit, and exploration and

---

[6] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000720-35.
[7] Counsel Decl., Exh. B at MAVERIX0013016.
[8] *Id*. at MAVERIX0013013.
[9] *Id*.
[10] *Id*.
[11] *Id*.
[12] Coeur Mining, "Kensington Gold Operations Alaska, Technical Report Summary," December 31, 2021 at p. 1-4. Available at
https://www.coeur.com/_resources/pdfs/Technical%20Reports/Kensington%20TR.pdf?v=1.001.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 4 of 35
4886-2647-3799\1

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

development work at other nearby deposits and exploration targets.[13]

Kensington, however, has always been the keystone of Coeur's mining efforts in the area. Kensington has literally by an order of magnitude the largest resource body and still has the greatest exploration potential.[14] Development and construction at Kensington was Coeur's central focus from the outset, and throughout the construction and development process Kensington remained the only prospect with proven reserves.[15] Only Kensington could justify the enormous effort and expenditure of building the infrastructure necessary for an underground gold mine in this remote location.[16]

And Coeur's investment in Kensington was very significant. Prior to beginning commercial production at the site it was required to develop a dock appropriate for barges with construction equipment, to improve the road from the dock to the mine site, to construct residential facilities (a "man camp") for workers, to construct the tailings facility, and to construct the processing facility, among other construction and development work for a total cost of over $530,000,000.00.[17]

**B. The Kensington Royalty Deed**

Coeur's counter-party in the Royalty Deed, Echo Bay, was of course fully aware of the significant investment that turning Coeur into an operating mine would take. Echo

---

[13] *Id.*
[14] Counsel Decl., Exh. B at MAVERIX0012985.
[15] Counsel Decl., Exh. C at 145-46, 159-60; Counsel Decl., Exh. D at 5-6. Proven reserves were only identified for the Jualin Mine in 2014. Counsel Decl., Exh. C. at 145-46.
[16] Counsel Decl., Exh. C at 162; Counsel Decl., Exh. E at MAVERIX0002973.
[17] *See* Counsel Decl., Exh. B at MAVERIX0013015; Counsel Decl., Exh. F at CM_004439.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 5 of 35
*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG
Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 6 of 36
4886-2647-3799\1

Bay was Coeur's joint venture partner for nearly a decade and was involved in all of the feasibility studies and exploration work done during that time, and so understood the work that had to be done.[18] Moreover, the terms of the Royalty Deed itself specifically set forth the parties understanding that to make Kensington a working mine Coeur would need to develop and build "a mine and mill, beneficiation facility, or processing plant . . . mining and milling or other processing equipment and machinery . . . [and] ancillary works such as roads, utilities, tailings disposal facilities, and camp facilities . . . ."[19]

Because the parties knew that such a significant investment would be needed to turn Kensington into an operational mine, and that ongoing investments would be necessary to keep it operational, the Royalty Deed allowed Coeur to recoup three separate categories of costs from the proceeds of commercial gold production from the mine prior to the right to a royalty kicking in. First, Coeur would be able to recoup "[d]irect capital costs for the construction of a mine and processing facility on the Properties, incurred prior to the Commencement of Commercial Production."[20] Second, Coeur would be able to recoup "costs incurred by Coeur after the Commencement of Commercial Production and prior to Recoupment" that includes Coeur's development mining and costs "in exploring for, mining, extracting, removing and transporting to a mill Gold Minerals produced from the Properties."[21] Finally, Coeur would be able to recoup "Exploration

---

[18] Counsel Decl., Exh. B at MAVERIX0013013-14.
[19] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000710-11.
[20] *Id*. at MAVERIX0000710.
[21] *Id*. at MAVERIX0000711.

Motion for Summary Judgment                     *Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Page 6 of 35                                     Case No. 1:21-cv-00021-SLG
4886-2647-3799\1

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 7 of 36

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

and Development Costs" incurred prior to Commercial Production.[22]

Coeur finally reached the "Commencement of Commercial Production" at Kensington in 2010, fifteen years after the Royalty Deed.[23]  Coeur's understanding of the importance of ongoing exploration work has played out over time.  In fact, the exploration work that Coeur has undertaken at the Kensington Mine is the only reason that the mine is still operational.[24]  Without the new reserves identified through Coeur's exploration work, the known gold mineral reserves would have been mined out long ago, years prior to any potential payout under the Royalty Deed.[25]  This process, by which a mining company extends the reported Life of Mine by discovering new reserves and making them available to be mined is known as "reserve replacement," and has been, from day one, a key part of Coeur and Echo Bay's plan for the Kensington mine.[26]

## C.     Coeur's performance under and Maverix's purchase of the Royalty Deed.

The parties do not dispute Coeur's performance under the Royalty Deed up to the point where it began to produce gold from the Mine.  Given the challenges of construction and development of the mine, commercial production was not in view for

---

[22] *Id*. at MAVERIX0000712.
[23] Coeur Mining, "Kensington Gold Operations Alaska, Technical Report Summary," December 31, 2021 at p. 2-1. Available at https://www.coeur.com/_resources/pdfs/Technical%20Reports/Kensington%20TR.pdf?v=1.001.
[24] Counsel Decl., Exh. C at 210-12.
[25] Counsel Decl., Exh. G at 119-21; Counsel Decl., Exh. C at 217.
[26] Counsel Decl., Exh. C at 89-90, 210, 212-13; Counsel Decl., Exh. E at MAVERIX0002973.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment                                    *Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Page 7 of 35                                                              Case No. 1:21-cv-00021-SLG
Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 8 of 36
4886-2647-3799\1

many years and the Royalty was paid little attention.[27]  For many years while Coeur constructed the mine, Coeur did not provide the quarterly reports called for by the Royalty Deed, nor did Echo Bay or its successor-in-interest Kinross Mining (which purchased Echo Bay) seek any reports.

Kinross first followed up with Coeur regarding the lack of reporting in 2017, 22 years after the parties entered the Royalty Deed.[28]  Coeur set out to rectify this error by working with Kinross to provide the reports and necessary information supporting Coeur's calculation of its Construction Investment.[29]

In 2019, Kinross took a renewed interest in Kensington, and again asked Coeur for additional information and follow up regarding Kensington, including a site visit and records audit.[30]  Coeur again cooperated, providing Kinross with all of the information and accounting backup it requested and making the site available.[31]

Unbeknownst to Coeur, Kinross was engaged at that time in its own due diligence to prepare the Kensington Royalty Deed for sale as part of a larger deal with Maverix.[32]  Maverix is not a mining company itself, but is instead essentially a finance company operating within the mining industry, with a portfolio of royalty deeds and streaming

---

[27] Counsel Decl., Exh. G at 119-21; Counsel Decl., Exh. C at 217.
[28] Counsel Decl., Exh. H at CM_015306-07.
[29] *Id*. at CM_015302-07.
[30] *See, e.g.*, Counsel Decl., Exh. I; Counsel Decl., Exh. J; Counsel Decl., Exh. K.
[31] *See., e.g.*, Counsel Decl., Exh. L.  Kinross mentioned conducting a full audit of Coeur's accounting for the Royalty Deed, but did not follow up. Counsel Decl., Exh. K; Counsel Decl., Exh. M; Counsel Decl., Exh. N at MAVERIX0009493.
[32] Counsel Decl., Exh. O.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment                    *Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Page 8 of 35                                                  Case No. 1:21-cv-00021-SLG
Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 9 of 36
4886-2647-3799\1

interests that it seeks to manage for its own financial benefit.[33]  Maverix purchased the Royalty Deed as part of a much larger transaction, in which it purchased a portfolio of 25 separate royalties and other assets from Kinross for a total purchase value of approximately $74mm in cash and equity.[34]

Coeur was not informed of Maverix's purchase of the Royalty Deed until after the deal had closed.[35]  Maverix received all of the documents and information it used for its due diligence for the transaction from Kinross.[36]  There is no evidence or claim that Kinross or Maverix informed Coeur of this sale or that Maverix and Kinross were sharing documents and information related to Kensington prior to closing.

Also unbeknownst to Coeur, Kinross and Maverix were laying the groundwork for this litigation during this due diligence process.  Kinross had identified what it believed was a claim that could speed up the collection of royalty payments from Kensington, based on assertions that Coeur had miscalculated the Base Recoupment Amount.[37]  There is no evidence that Kinross ever informed Coeur of this issue.  Instead, Kinross sold the claim to Maverix, which in turn promised to pursue the claim for Kinross and to kick back to Kinross a share of the proceeds from any litigation, in a special portion of the sale contract entitled "Kensington Dispute Proceeds."[38]

---

[33] Counsel Decl., Exh. P at 12.
[34] Counsel Decl., Exh. Q at 29.
[35] Counsel Decl., Exh. G at 29-30; Counsel Decl., Exh. C at 20.
[36] Counsel Decl., Exh. Q at 66-67.
[37] Counsel Decl., Exh. Q at 73:16-20 ("Kinross had indicated that they felt . . . that recoupment may already have been achieved prior to . . . Maverix acquiring the royalty.")]
[38] *See* Counsel Decl., Exh. R at MAVERIX0008124.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Maverix and Kinross completed their transaction on December 1, 2019.[39] Coeur first learned about the change in ownership when its corporate development chief Alim Visram read about the deal early in 2020.[40]

### D. Coeur corrects its royalty statements

In 2019, Coeur's Controller and Chief Accounting Officer Ken Watkinson realized that Coeur may have been inadvertently excluding exploration and development drilling costs from its base recoupment calculations.[41] Mr. Watkinson initiated internal conversations at Coeur on the issue,[42] and it was agreed that Coeur "should definitely include [the costs] if the agreement allows."[43] Mr. Watkinson then followed through the internal process of obtaining the review and approval of such a change in Coeur's recoupment accounting, which took several months.[44] As such, while this internal review process to determine whether it was appropriate for Coeur to include such post-commercial production exploration and development costs in its Construction Investment calculations was ongoing, Coeur sent out another Quarterly Report that did not include these amounts.[45]

Mr. Watkinson fully expected to have further conversation with Kinross about the recoupment statements after Kinross requested an audit, but Kinross had stopped engaging with Coeur as (unbeknownst to Couer) it was preparing to sell the Royalty

---

[39] *Id*. at MAVERIX0008097.
[40] Counsel Decl., Exh. G at 117.
[41] Counsel Decl., Exh. C at 97:1-10.
[42] *Id*. at 99:12-100:1.
[43] Counsel Decl., Exh. G at 106; Counsel Decl., Exh. S.
[44] Counsel Decl., Exh. C at 99:10-17; 101:24-102:7.
[45] *Id*. at 108:23-24.

Motion for Summary Judgment
Page 10 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 11 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Deed to Maverix.[46]  As Mr. Watkinson later summarized:

> One item of note is that we should probably figure out how to address with Maverix is the right to include exploration spending as recovery cost.  The calculation as performed **does not** include a credit for [] the exploration spending however the agreement allows for it.  I am not sure why my predecessors did not include it but when I was working on the initial investment audit that Kinross did last year I determined that we could be taking this deduction.  My expectation was that Kinross was going to challenge some of the costs included in the initial investment and we would raise it then, they never did and it was sold rather quickly thereafter to Maverix.[47]

While Coeur was determining whether it could properly revise its recoupment statements, Coeur and Maverix communicated regarding a number of different subjects, including potential partnerships and other transactions.[48]  Maverix did not inform Coeur during this time of the dispute it had agreed with Kinross to pursue against Coeur or of the specific claim underlying that dispute.

Once Coeur's senior management and legal teams had determined it was appropriate, Mr. Watkinson included Coeur's post-commercial production exploration and development costs, as the Royalty Deed allows.[49]  This was a significant addition to the calculation of the Construction Investment, approximately $158 million.[50]  This led to a series of emails back and forth between Mr. Watkinson and Matt Fargey, Maverix's

---

[46] *Id*. 103:6-20.
[47] Counsel Decl., Exh. T at CM_045837-38.
[48] Counsel Decl., Exh. G at 63-64, 66.
[49] *See* Counsel Decl., Exh. C at 102:18-21; Counsel Decl., Exh. U at MAVERIX0003669.
[50] As noted by Mr. Watkinson on Counsel Decl., Exh. U at MAVERIX0003669, the highlighted exploration, mine development, and mining tax costs on Coeur's 3rd Quarter 2020 royalty statement, Counsel Decl., Exh. V, reflect the costs Coeur had failed to include on earlier statements.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 11 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 12 of 36
4886-2647-3799\1

CFO, in which the parties laid out their positions.[51]  They attempted to resolve the matter through a discussion, but it soon became apparent that the parties were too far apart.[52]  The present lawsuit followed.

## III.    ARGUMENT

Coeur respectfully submits that Maverix's bad faith and misrepresentation claims must be summarily dismissed because Maverix lacks evidentiary support for fundamental elements of those claims, and that Coeur is entitled judgment in its favor as a matter of law on the parties' competing contract interpretation claims.

Summary judgment is warranted when no material issues of fact exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  The party moving for summary judgment has the initial burden to show an absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, the nonmoving party has the burden to establish the existence of an issue of fact regarding an element essential to that party's cause, and on which that party will bear the burden of proof at trial. *Id.* at 323-24. To discharge its burden, the nonmoving party cannot rely on the pleadings, but must instead come forth with evidence showing that there is a genuine issue for trial.  *Id.* at 324.  Implausible conclusions drawn from the evidence are insufficient to carry this burden.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find

---

[51] Counsel Decl., Exh. E.
[52] Counsel Decl., Exh. Q at 173:20-174:16.

Motion for Summary Judgment
Page 12 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 13 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

for the non-moving party, there is no 'genuine issue for trial'").  Moreover, "[a] question of fact may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion."  *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1161 (9th Cir. 2009).

## IV.  MAVERIX'S BAD FAITH CLAIM MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE TO SUPPORT IT

Maverix's assertion of a bad faith breach of contract claim is an unfortunate distraction, but more importantly it is without merit.  It adds nothing to Maverix's case as it entitles Maverix to no additional or different damages and has needlessly added an element of acrimony to a business dispute.  This claim appears to mostly be a litigation gambit to cast Coeur and its contract claims in an unsavory light.  Regardless, there is no evidence to support any claim that Coeur acted in bad faith, and so it should be dismissed.

The Royalty Deed is to be construed under Alaska law.[53]  In Alaska, "[t]he covenant of good faith and fair dealing is implied in every contract in order to effectuate the reasonable expectations of the parties to the agreement."[54]  "A party asserting a breach of the covenant must prove that the other party failed to act in subjective good faith, 'meaning that it cannot act to deprive the other party of the explicit benefits of the contract,' or that it failed to act 'in objective good faith, which consists of acting in a

---

[53] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000718.
[54] *Anchorage Chrysler*, 221 P3d at 992 (quoting *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).

Motion for Summary Judgment
Page 13 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 14 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

manner that a reasonable person would regard as fair.'"[55]  Maverix has alleged that Coeur

failed to act in subjective good faith by taking "actions . . . in order to avoid its

obligations to Maverix."[56]

Maverix suggests that the timing of Coeur's assertion of its right to recoup

additional exploration and development costs (soon after Maverix informed Coeur that

recoupment might be closer than previously thought), combined with Coeur's incentive

to increase the amount subject to recoupment, demonstrates that Coeur came up with the

claim to avoid having to pay Maverix its royalty.[57]  Maverix also asserts that Coeur's

position is in bad faith because the reasons Coeur provided in support of it were

purportedly insufficient.[58]

Neither of these assertions are sufficient to survive summary judgment.  The

former is simply the logical fallacy of *post hoc ergo propter hoc*, and is not evidence at

all.  If it were bad faith for a party to assert a position soon after learning it might benefit

---

[55] *Laybourn v. City of Wasilla*, 362 P.3d 447, 458 (Alaska 2015) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 384 (Alaska 2004)).

[56] Doc. 1 at 12-13 (Maverix Complaint).

[57] Counsel Decl., Exh. Q at 41:5-19 ("Q: Are you aware of any specific facts that support the allegation that Coeur's intent in taking whatever actions it took were to avoid obligations to Maverix or to deprive Maverix of the benefits of its bargain under the royalty deed?

A: . . . [T]here was a discussion by our president with the vice president of corporate development.  I believe, at Coeur in the summer of 2020, and it was communicated during that conversation that the royalty would begin paying in a certain amount of years.  And after that communication, we received a revised recoupment statement that added a significant amount of cost which would ultimately deter the payment of the royalty.").

[58] Counsel Decl., Exh. P at 28:20-29:8 ("Q: Why – well, do you believe that Coeur's addition of exploration and development costs after the commencement of commercial production was made in bad faith? . . . .

A: Well, couple reasons.  The first one being that it does not follow the royalty deed.  And in addition to that, the explanations provided for adding those costs were insufficient in our – my opinion.")

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 14 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 15 of 36

4886-2647-3799\1

them, every breach of contract case would also be a bad faith case. The latter assertion is also not evidentiary in nature. As author Upton Sinclair famously noted, "It is difficult to get a man to understand something, when his salary depends on his not understanding it."[59] Maverix and its representatives certainly have their own incentive herein to portray Coeur's position as insufficient, but such litigation hyperbole is not evidence.

To the contrary, the direct evidence of Coeur's intent and understanding fatally undermines Maverix's position. Coeur's Controller and Chief Accounting Officer, Ken Watkinson, was the person responsible for managing Coeur's performance under the Royalty Deed and was also the individual who first noted that Coeur had not been including the full amounts in its recoupment calculation that it was entitled to.[60] Mr. Watkinson has explained that new activity related to the Royalty Deed – including Kinross' renewed attention to it, changes in the price of gold, and eventually the sale to Maverix – made him think about the Royalty Deed.[61] He also explained what prompted him to look more closely at the contract to determine that Coeur could include additional amounts in its Construction Investment calculation – a growing disparity of the trend lines between free cash flow from mine operations and recoupment.[62] As Mr. Watkinson explained, under Coeur's view of the Royalty Deed the linear path of these two graph lines should be directionally close, but they were not, so he determined to look into how Coeur was calculating the Recoupment. This is both supported by contemporaneous

---

[59] Upton Sinclair, "I, Candidate for Governor: And How I Got Licked" (1935).
[60] Counsel Decl., Exh. C at 97:1-10.
[61] *See, e.g.*, Counsel Decl., Exh. T at CM_045837-38.
[62] Counsel Decl., Exh. C at 97.

Motion for Summary Judgment
Page 15 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 16 of 36

4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

documentary evidence and manifestly reasonable.[63]

Coeur's determination to assert its contract rights was also perfectly appropriate and cannot support a bad faith claim. The documentary record demonstrates that, after engaging in the process described above, Mr. Watkinson raised the issue he found – that the Royalty Deed allowed Coeur to include additional exploration and development costs in its Construction Investment calculation – with Coeur's VP of Corporate Development Alim Visram. "One item of note that we should probably figure out how to address with Maverix is the right to include exploration spending as recovery cost. The calculation as performed does not include a credit for to the exploration spending however the agreement allows for it. I am not sure why my predecessors did not include it but when I was working on the initial investment audit that Kinross did last year I determined that we could be taking this deduction. My expectation was that Kinross was going to challenge some of the costs included in the initial investment and we would raise it then, they never did and it was sold rather quickly thereafter to Maverix."[64] Mr. Visram responded, "good catch on exploration, sounds like we should definitely include it if the agreement allows."[65] Mr. Watkinson then raised the issue with senior management and vetted it with the legal department.[66] After undergoing this reasonable process to determine it was an appropriate, Mr. Watkinson included these amounts on the next

---

[63] Although Maverix may now seek to disclaim this or distinguish what was done, several members of its own staff used free cash flow as a guide to provide insight on the status of Coeur's recoupment at Kensington. Counsel Decl., Exh. Q at 156; Counsel Decl., Exh. P at 185:16-186:22; Counsel Decl., Exh. W; Counsel Decl., Exh. X at 101:6-102:1; Counsel Decl., Exh. S.
[64] Counsel Decl., Exh. C at 99:10-17; 101:24-102:7.
[65] *Id.*
[66] Counsel Decl., Exh. C at 99:10-17; 101:24-102:7.

Motion for Summary Judgment
Page 16 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 17 of 36
4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

calculation of construction investment.[67] There is nothing in this record that supports an assertion of bad faith or improper motive on Coeur's part.

Maverix's bad faith claim is a distraction from the straightforward contract interpretation issues presented in this case, and Maverix's speculative assertions regarding Coeur's subjective motivations cannot entitle Maverix to any different or greater relief in this case. More important for the Court's present purposes, however, is that the evidence cannot support a bad faith claim here. This claim must be dismissed.

## V.    MAVERIX'S MISREPRESENTATION CLAIM MUST BE DISMISSED

Maverix's claim that Coeur negligently misrepresented information on its recoupment statements should be dismissed. Under Alaska law,

> The tort of negligent misrepresentation has four essential elements: (1) the party accused of misrepresentation must have made the statement in the course of his business, profession or employment; (2) the representation must supply "false information"; (3) the plaintiff must show "justifiable reliance" on the false information; and (4) the accused party must have failed "to exercise reasonable care or competence in obtaining or communicating the information."[68]

"A negligence action can exist only if the defendant owed the plaintiff a duty of care."[69]

Maverix's negligent misrepresentation claim fails for the following reasons.

<u>First</u>, Coeur owed no duty of care to Maverix. "[B]efore there can be liability for negligent misrepresentation, 'there must be a relationship between the parties, whether

---

[67] Counsel Decl., Exh. U at MAVERIX0003669.

[68] *Miller v. State*, 353 P.3d 346, 348 (Alaska 2015) (quoting *Willard v. Khotol Servs. Corp.*, 171 P.3d 108, 118-19 (Alaska 2007); *see also Williard*, 171 P.3d at 118 (adopting negligent misrepresentation's elements from the Restatement (Second) of Torts § 552).

[69] *Selden v. Burnett*, 754 P.2d 256, 259 (Alaska 1988) (citing *Stephens v. State, Dep't of Revenue*, 746 P.2d 908, 910 (Alaska 1987)).

Motion for Summary Judgment
Page 17 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 18 of 36

4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

growing out of contract or otherwise, such that in morals and good conscience the plaintiff has the right to rely upon the defendant for information, and the latter owes a duty to give the information with care.'"[70] For example, in *Selden v. Burnett*, the Alaska Supreme Court held that "an accountant in the course of giving personal tax advice verbally recommends a particular investment to a client, the accountant owes a duty of care to third parties only if the accountant specifically intends the third parties to invest relying on his advice, and only if he makes his intent known."[71]

Coeur did not intend to provide royalty statements to Maverix, nor did it know that Maverix would receive them. It provided the royalty statements to Kinross, the royalty-holder at the time.[72] Coeur did not know that Maverix had any interest in the Echo Bay royalty until Maverix's purchase from Kinross was announced.[73] Coeur instead expected to have ongoing communications with Kinross about the Royalty Deed related to Kinross's records audit, but then the Royalty Deed was unexpectedly "sold rather quickly thereafter to Maverix."[74] Coeur owed no duty to Maverix associated with the royalty statements, and thus Maverix's negligent misrepresentation fails as a matter of law.

<u>Second</u>, Maverix cannot have justifiably relied on Coeur's royalty statements. The contract by which Maverix purchased the Royalty Deed and the process leading up

---

[70] *Id*. (quoting *Howarth v. Pfeifer*, 443 P.2d 39, 43 (Alaska 1968)).
[71] *Id. Cf. Municipality of Anchorage v. Integrated Concepts & Research Corp.*, No. 3:13-cv-00063-SLG, 2016 U.S. Dist. LEXIS 167350, at *11 n.29 (D. Alaska Dec. 5, 2016) (recognizing that "a professional opinion can be the basis of a misrepresentation claim so long as the defendant intended for the plaintiff to rely on the opinion").
[72] *See* Counsel Decl., Exh. F; Counsel Decl., Exh. DD.
[73] *See* Exh G at 117.
[74] Counsel Decl., Exh. S.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 18 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 19 of 36

4886-2647-3799\1

to that contract definitively establish that Maverix did not rely, and could not reasonably have relied, on the accuracy of Coeur's recoupment statements sufficiently to support a misrepresentation claim.

The deposition testimony and documentary evidence establish that Maverix was informed by Kinross during Maverix's due diligence that Kinross believed Coeur's recoupment statements were inaccurate:

- "We were aware that Kinross had questioned certain things in the recoupment statements that Coeur had provided them."[75]

- "My recollection at the time was that Coeur had provided the underlying or parts of the underlying information that formed the recoupment balance and that . . . Kinross was, I guess, objecting or had some concerns about the actual costs themselves. . . . I believe from my recollection that they were questioning whether or not the costs could be included in the recoupment value."[76]

- "[A]t the time my understanding was that Kinross thought that there was some miscounting in the initial capital expenditures related to Kensington."[77]

- "[]I was aware of Kinross's specific concerns related to the base

---

[75] Counsel Decl., Exh. Q at 70:10-12.
[76] Counsel Decl., Exh. Q at 76:9-19.
[77] Counsel Decl., Exh. P at 68:9-12.

Motion for Summary Judgment
Page 19 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 20 of 36

4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

recoupment . . . ."[78]

Maverix was also expressly informed by Kinross that Kinross had intended to audit Coeur, as allowed by the Royalty Deed, due to Kinross's concerns regarding the accuracy of Coeur's recoupment calculations, but that Kinross had not gotten around to conducting the audit.[79] Maverix indisputably knew that Kinross not only did not believe Coeur's recoupment statements were accurate, but in fact intended to dispute them.

This all led directly to a unique and special provision of the purchase contract between Maverix and Kinross. The contract specifically defined the "Kensington Dispute Proceeds" as "any payments or other amounts payable in connection with the Kensington Royalty for the period commencing on the grant thereof to and including the Cut-Off Date . . . ."[80] Kinross further informed Maverix that it believed Coeur's recoupment statements to be inaccurate by excepting the Kensington Royalty from the warranty provisions of the deal:

> **3.5 Royalty Instruments.** Except as disclosed in Schedule A, . . . (b) none of Seller or Kinross Royalty Subsidiaries or, to the Knowledge of Seller, any other party to the Royalty Instruments is in material default of its obligations under the Royalty Instruments, nor, to the Knowledge of Seller, are there any issues that could lead to a default under any Royalty Instrument, except with respect to the Kensington Royalty; . . . (e) except with respect to the Kensington Royalty, to the Knowledge of Seller, all payments due under each Royalty Instrument have been paid and there are no amounts outstanding under any Royalty Instrument.[81]

Further, Maverix _expressly promised_ to pursue claims against Coeur explicitly

---

[78] Counsel Decl., Exh. X at 25:4-5; _see also_ Counsel Decl., Exh. Y.
[79] Counsel Decl., Exh. N at MAVERIX0009493.
[80] Counsel Decl., Exh. R at MAVERIX0008104.
[81] _Id_. at MAVERIX0008112.

Motion for Summary Judgment                    _Maverix Metals Inc. et al v. Coeur Alaska, Inc._
Page 20 of 35                                  Case No. 1:21-cv-00021-SLG
Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 21 of 36
4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

based on the assertion that Coeur's recoupment statements were not accurate.[82]

Finally, Maverix was able, prior to its purchase of the Royalty Deed, to review the language of the Royalty Deed that allows Coeur to include exploration and development costs in its calculation of Construction Investment, and also reviewed Coeur's Technical Reports that indicated Coeur was incurring ongoing exploration and development costs,[83] and reviewed Coeur's Recoupment Statements[84] that did not contain these exploration and development costs. Maverix was therefore also on notice that Coeur's cost reporting might be understated.

On this record, Maverix cannot as a matter of law assert that it actually, reasonably or justifiably relied on the accuracy of Coeur's recoupment statements. To the contrary, it made a contractual commitment to pursue a "dispute" based on the claimed _inaccuracy_ of those statements.[85] The documentary record does not support the notion that Maverix ever believed that its investment in the Royalty Deed was anything other than a gamble. Maverix's due diligence notes indicate more than once its understanding that there was a significant likelihood that the Royalty Deed might never pay out at all, much less at any

---

[82] _Id._ at MAVERIX0008124 ("(c) Following Closing, the Buyers (i) shall use commercially reasonable efforts to effectuate recovery of the Kensington Dispute Proceeds, . . . and (iii) will enforce its rights under the Contract relating to the Kensington Royalty with respect to the Kensington Dispute Proceeds, at the sole expense of the Seller, unless otherwise directed by the Seller in writing.").

[83] Fargey Depo at 138-39.

[84] Fargey Depo at 150-51.

[85] Maverix can be expected to try to distinguish between Coeur's calculation of the Base Recoupment Amount and its calculation of its post-production Construction Investment, and assert that while it did not rely on the former it did rely on the latter. That is cutting things quite a bit too fine. There is no evidence that Maverix specifically reviewed the post-production calculations sufficiently to distinguish them from the Base Recoupment calculations for purposes of reliance.

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 21 of 35

_Maverix Metals Inc. et al v. Coeur Alaska, Inc._
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 22 of 36
4886-2647-3799\1

specific date.[86] It is fair for Maverix to step into Kinross's shoes with respect to its dealings with Coeur and assert Kinross's contract claims. It is not fair for Maverix to assert that, due to a transaction and sharing of documents that Coeur was never made aware of it stands in a *better* position than Kinross, and that Coeur must now absolve Maverix from any risks related to Maverix's purchase of the Royalty Deed.

The misrepresentation claim must be dismissed.

## VI.  COEUR IS ENTITLED TO JUDGMENT IN ITS FAVOR ON THE PARTIES' COMPETING CONTRACT INTERPRETATION CLAIMS

The heart of this matter is the parties' competing declaratory relief claims regarding the interpretation of the Royalty Deed. As set forth in detail below, under the terms of the Royalty Deed Coeur properly included exploration and development costs incurred after the commencement of commercial production at Kensington in the Construction Investment it is allowed to recoup. The Royalty Deed also does not require Coeur to re-calculate its Base Recoupment in the way that Maverix seeks.

"Questions of contractual interpretation are questions of law . . . ."[87] The goal of contract interpretation "is to 'give effect to the reasonable expectations of the parties.'"[88] "[I]nterpretation of a contract term does not take place in a vacuum, but rather requires

---

[86] *See* Counsel Decl., Exh. Z at MAVERIX0000020 ("The operation is challenged by a short mine life. Using the latest disclosure to deplete the Reserve, it is estimated that there is 4-6 years [Life of Mine] remaining."); Counsel Decl., Exh. AA at MAVERIX0000416 ("Only 7 years of mine-life left at current R&R . . . . Royalty is unfavourable if operating costs increase or metal prices dip – unlikely to recoup construction costs within mine-life if so."); *see also* Counsel Decl., Exh. BB ("When (if ever) do we expect Kensington to start paying out?").

[87] *Dep't of Transp. & Pub. Facilities v. Osborne Constr. Co.*, 462 P.3d 991, 995 (Alaska 2020).

[88] *Graham v. Municipality of Anchorage*, 446 P.3d 349, 352 (Alaska 2019) (quoting *Stepanov v. Homer Elec. Ass'n.*, 814 P.2d 731, 734 (Alaska 1991)).

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 22 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 23 of 36

4886-2647-3799\1

consideration of the provision and agreement as a whole."[89]

### A. Coeur Properly Included Exploration and Development Costs Incurred After the Commencement of Commercial Production In Its Calculation of Construction Investment[90]

The Royalty Deed's plain language evidences the intent of Coeur and Echo Bay (the original royalty holder) that Coeur would continue to explore for more minerals to expand the mine's resource base even after it began commercial production and would be fully able to recoup those costs. Royalty Deed Section 2(b) allows Coeur to recoup the following costs incurred by Coeur after the Commencement of Commercial Production and prior to Recoupment:

> (i) Mining Costs. Costs incurred by Coeur in <u>exploring for</u>, mining, extracting, removing and transporting to a mill Gold Minerals produced from the Properties. Such costs shall include, without limitation, those incurred for . . . <u>exploratory drilling</u> . . . .[91]

Maverix disputes that this section allows Coeur to recoup costs incurred to explore for minerals. Yet the Royalty Deed expressly allows Coeur to recoup such costs. Moreover, the Royalty Deed gives Coeur complete control over the "timing, manner, method and amounts of such exploration and production."[92] Read in combination with Section 2(b), the Royalty Deed gives Coeur discretion to conduct exploration at any time, including

---

[89] *Id.* (quoting *Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc.*, 377 P.3d 959, 975 (Alaska 2016)).

[90] Coeur and Maverix are in agreement that "Direct Capital Costs" under Section 2(a) of the Royalty Deed and "Exploration and Development Costs" under Section 2(c) of the Royalty Deed were eligible for inclusion in Coeur's Construction Investment ("CCI") balance only up until the point of Commencement of Commercial Production, which has passed.

[91] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000711.

[92] *Id.* at MAVERIX0000717.

Motion for Summary Judgment
Page 23 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 24 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

after the commencement of commercial production, and the right to recover those costs before royalty payments are due.

1.      Coeur's Interpretation Aligns with the Reasonable Intent and Expectations of Coeur and Echo Bay.

This straight-forward interpretation is aligned with the reasonable expectations of Coeur and Echo Bay as demonstrated by consideration of the provision and agreement as a whole. As noted above, Coeur and Echo Bay were dealing with the exploration for and development of a resource at a remote location that would require significant investments in infrastructure.[93] As with any mining project, there could be no guarantee that the project would ever lead to viable production. Part of what made the investment worthwhile was the understanding that there was a significant possibility of additional resources in the area that could be brought into viable production through the infrastructure developed for the project.[94] Coeur also understood that such additional resources might be found through additional exploration of previously unexplored sections of the many patented and unpatented claims included in the assets subject to the Royalty Deed (the "Properties").[95]

The Royalty Deed's plain text outlines the parties' understanding that Coeur would continue to explore for gold on the Properties after commercial production formally commenced, and understood that such continued exploration (in addition to other exploration off the Properties) was essential to the economics of the project. Echo

---

[93] Counsel Decl., Exh. B at MAVERIX0012978; Counsel Decl., Exh. E at MAVERIX0002969.
[94] Counsel Decl., Exh. E.
[95] Counsel Decl., Exh. C at 89-90; Counsel Decl., Exh. D at 142; Counsel Decl., Exh. E.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 24 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 25 of 36

4886-2647-3799\1

Bay, as the mine's former operator, would have understood that exploration should not cease simply because commercial production had begun. Instead, both parties understood that exploration would be ongoing. From Coeur's perspective, continued exploration would allow it to increase the potential returns on the costs of the infrastructure it had to build in this expensive and remote location. From Echo Bay's perspective, while such exploration might push off the date when payments on the royalty began, it could also add years to the time period during which the royalty would be paid out and increase the total amount of the royalty.[96]

The significance of ongoing exploration for additional resources at the "target rich environment" of Kensington has played out over time. The reserves that had been identified at the time of the commencement of commercial production have long since been mined out.[97] Since that point, Coeur has been mining for minerals that it identified through its exploration and development work at the mine after the commencement of commercial production. As shown in Coeur's more recent Technical Reports made available to the public under Canadian Public Law 43-101, given the reserves that Coeur was able to identify as "proven and probable" at any given time, the projected Life of Mine ("LOM") at Kensington has not been more than several (i.e. 3-4) years.[98] The Mine has been able to continue to operate over the past decade, however, through the process of "reserve replacement," through which Coeur continually engages in

---

[96] Counsel Decl., Exh. E at MAVERIX0002969.
[97] Counsel Decl., Exh. G at 119-21; Counsel Decl., Exh. C at 217.
[98] *See, e.g.*, Counsel Decl., Exh. B at MAVERIX0013121.

Motion for Summary Judgment
Page 25 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 26 of 36

4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

exploration and development work to identify new reserves to mine.[99]  It is also indisputable that, without this ongoing exploration and development work, Coeur could never recover anything close to its Base Recoupment Value at the Mine, much less the full Construction Investment.  Without such expenditures, in other words, neither Maverix nor its predecessor ever would have had any hope of receiving a royalty payment.

The language in Section 2(b)(i) the Royalty Deed allows Coeur to include in CCI certain "Mining Costs" incurred after Commencement of Commercial Production, which include costs "incurred by Coeur in *exploring for* … Gold Minerals produced from the Properties."[100]  Coeur is thus expressly authorized to include post-production exploration costs in its Construction Investment, and to do so is simply required to demonstrate that the Exploration Costs are "incurred" and can be tied to Gold Minerals produced at a future date.  These are the "exploration costs" that Coeur has charged to its Construction Investment.

Further, in an underground mine like Kensington, the "development costs" Coeur has included in its Construction Investment essentially consist of two categories that are also expressly allowed by the Royalty Deed: "developmental drilling" and "mining costs" (e.g. digging out and removing rock) that are incurred to reach an ore body identified through exploration.[101] Such costs are also expressly allowed by Section 2(b)(i) of the

---

[99] *See* Counsel Decl., Exh. Q at 133-35.
[100] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000711.
[101] Counsel Decl., Exh. C at 203:23-204:2.

Motion for Summary Judgment
Page 26 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 27 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Royalty Deed, and it was fully appropriate of Coeur to include them.

> 2. Maverix's Interpretation Ignores the Royalty Deed's Plain Language and the Practicalities of an Underground Mine.

Maverix initially objected to the inclusion of exploration and development costs based on a technical definition of "capitalized" and "expensed costs." According to Maverix, including capitalized exploration and development costs indicated "a disconnect between the timing of when the exploration and development costs are incurred and when the Gold Minerals are produced."[102] This reasoning oversimplifies the mine's accounting and overlooks the needs of an underground mine whose reserves are renewed through exploration.

In a royalty scenario under which post-commencement exploration costs are *not* recoverable, a royalty holder might look to whether costs are capitalized or expensed under US GAAP to indicate whether the costs were incurred pre- or post-commencement of production. But because the language of the Royalty Deed expressly authorizes Coeur to recoup post-commencement "costs incurred by Coeur in exploring for … Gold Minerals," such a simplified indicator does not apply.[103]

It would not be possible for Coeur to expense the post-commencement Exploration Costs immediately upon their being incurred, because any production related to such costs is not near-term.[104] And because exploration for gold minerals cannot lead to near-term production, such costs must instead be capitalized on the books under US

---

[102] Counsel Decl., Exh. E at MAVERIX0002975.
[103] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000711.
[104] Counsel Decl., Exh. E at MAVERIX0002970.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

GAAP.[105]  Moreover, such post-commencement exploration costs cannot be immediately tied directly to cost of goods sold under US GAAP in any event, again because gold production related to such expenditures is not near term.[106]

Maverix's interpretation would allow Coeur to include in the recoupable Construction Investment only "expensed Exploration Costs under US GAAP."[107]  That would mean that capitalized exploration costs – i.e., the costs that US GAAP defines as costs incurred related to reserve (proven and probable) – would be excluded, which would mean that very little of Coeur's post-commencement Exploration Costs could be included in its Construction Investment at all.  It is not reasonable to interpret the Royalty Deed to impose by implication an accounting requirement that necessarily deprives Coeur of a substantive right expressly provided by the language of the contract itself.

Nor is there any specific language in the Royalty Deed that requires Maverix's interpretation.  There is nothing in the language of the Royalty Deed that allows Coeur to include in Couer's Construction Investment only "expensed Exploration Costs under US GAAP" or that precludes it from including "capitalized Exploration Costs under US GAAP."  Instead, Coeur is expressly authorized to include post-Commencement "Exploration Costs" in its Construction Investment, and to do so is simply required to demonstrate that the Exploration Costs are "incurred" and can be tied to Gold Minerals produced at a future date.  There is nothing in the Royalty that makes the US GAAP

---

[105] *Id.*
[106] *Id.*
[107] "Expensed" exploration is generally related to resource expansion work.

Motion for Summary Judgment
Page 28 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 29 of 36
4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

treatment of Exploration Costs as "capitalized" or "expensed" relevant to their inclusion at all. Again, Maverix's interpretation would use the application of an accounting method that is neither compulsory from an accounting perspective nor required by the terms of the Royalty Deed to deprive Coeur of a substantive right it is entitled to under the express language of the contract.[108]

In sum, the Royalty Deed allows Coeur to include the exploration and development costs incurred after commencement of commercial production as noted in its quarterly statements and this Court should grant Coeur's declaratory relief.

**B.     The Royalty Deed Does Not Require Coeur To Restate Its Allocation Accounting**

As noted above, the area where the Kensington Mine is located also contains other mining prospects that are not covered by the Royalty Deed, most notably the Jualin Mine. The Royalty Deed directs that, where expenses eligible for inclusion in Construction Investment "are incurred partly for the benefit of any other properties or interests of Coeur, only the portion of such costs reasonably attributable to development and operation of the Properties in accordance with GAAP shall be included in Coeur's Construction Investment."[109]

Coeur has followed this directive. When Jualin became an identified resource,

---

[108] Nor is Coeur's accounting simply self-serving. Coeur is also incurring significant additional construction and development costs for the benefit of the Kensington Properties, such as road improvements and a significant tailings dam expansion and improvement project, that are not charged to Construction Investment because the Commencement of Commercial Production date has passed. Counsel Decl., Exh. E at MAVERIX0002970.

[109] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000712.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Coeur excluded those portions of such expenses that were incurred for the benefit of Jualin from its Construction Investment calculations. A significant example of this in practice involves the costs of running the processing facility, which is used to process ore from both Kensington and Jualin.[110] Coeur undertakes a "co-mingling" analysis, under which it determines the total percentage of gold minerals produced from each mine, and then applies that percentage to the total expenses of running the processing facility to determine what amount to allocate to Jualin.[111] It includes only the remaining amount in its calculation of Construction Investment subject to recoupment.[112]

Maverix has taken the sweeping position is that essentially all of the construction investments Coeur has made at the site since it began developing Kensington in 1995 – including the roads, tunnels, processing facilities, worker residences, etc. – were incurred at least in part "for the benefit" of the Jualin deposit, regardless of the time at which they were incurred.[113] Maverix asserts that these purportedly "[e]ligible costs incurred for the benefit of the Jualin deposit prior to Gold Minerals produced from it should be excluded" from the calculation of Coeur's Construction Investment for Kensington under the Royalty Deed.[114] In Maverix's view, this requires Coeur to restate all of the accounting for its Construction Investment from the very beginning of the project, and to allocate an appropriate percentage of those construction expenses to Jualin (and thus remove them

---

[110] Counsel Decl., Exh. C at 161-62.
[111] *Id.*; *see also* Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000712.
[112] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000712.
[113] *See* Counsel Decl., Exh. CC at 9.
[114] Counsel Decl., Exh. E at MAVERIX0002975.

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

from Coeur's calculation of the Construction Investment it is allowed to recoup).[115]

Maverix's proposed interpretation of the Royalty Deed is inconsistent the Royalty Deed's plain language. The Royalty Deed does not require Coeur to conduct a backward-looking recalculation of construction investment allocation of pre-production expenditures based on the present uses of the infrastructure, as Maverix has suggested. Further, Maverix's interpretation is inconsistent with basic accounting principles. Coeur's allocation of construction expenses to Kensington was proper when done and remains so today. Finally, if Maverix's position were accepted, it could also require further recalculations in the distant future if other deposits are found and make use of any of the infrastructure, creating a cycle of uncertainty in which recalculation and adjustment of prior periods is a constant issue. The Court should reject Maverix's position.

The Royalty Deed requires Coeur to conduct its accounting, including allocation of costs to specific projects, "in accordance with GAAP."[116] Under the GAAP principals applicable to this mining project, Coeur can only allocate capital construction expenses to a project that has an identified resource.[117]

This principle – that Coeur's accounting be viewed as of the time it was recorded and not with revisionist hindsight – is consistent with other provisions of the Royalty Deed. For example, Section 8 restricts the royalty holder's ability to challenge Coeur's

---

[115] *Id.*
[116] Counsel Decl., Exh. A (Royalty Deed) at MAVERIX0000712.
[117] Counsel Decl., Exh. C at 157, 160-62.

Motion for Summary Judgment
Page 31 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG    Document 43    Filed 01/18/23    Page 32 of 36

4886-2647-3799\1

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

royalty payment accounting:

> All Net Return Royalty payments shall be considered final and in full satisfaction of all obligations of Coeur with respect thereto unless Echo Bay gives Coeur written notice describing and setting forth a specific objection to the calculation thereof <u>within one year</u> after receipt by Echo Bay of the quarterly statement. Failure on the part of Echo Bay to make claim on Coeur for adjustment in the one-year period specified in this section shall establish the correctness of such statement and preclude the filing of exceptions thereto or making of claims for adjustment thereon.[118]

Thus, the intent of Coeur and Echo Bay was that Coeur would conduct periodic accounting. And if, for example, a new resource were identified two years after the royalty payments began, the royalty holder would have no right to demand revisions of Coeur's prior accounting statements.

Applying these principles, Coeur's allocation of infrastructure expenses to Kensington was proper when it was done and remains so today because the specific intent of those expenses at the time they were incurred were and _**could only have been**_ to benefit Kensington, and because Coeur could not properly have allocated any of these expenses to Jualin for the accounting periods during which they were incurred.

The Jualin resource was first subject to a preliminary economic analysis in 2015, and the resource was specifically identified as proven/probable in 2016.[119] All Jualin costs incurred after the resource was identified were segregated in Coeur's accounting

---

[118] _Id_. at MAVERIX0000717 (emphasis added).

[119] Counsel Decl., Exh. E at MAVERIX0002970. Jualin has only produced 5% of total gold production from the shared processing facility to date. _Id_. The Jualin resource body is smaller and will play out more quickly than Kensington – in fact it is expected to play out within the next year. _See_ Coeur Mining, "Kensington Gold Operations Alaska, Technical Report Summary," December 31, 2021 at p. 13-9. Available at https://www.coeur.com/_resources/pdfs/Technical%20Reports/Kensington%20TR.pdf?v=1.001.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

system, and Coeur has been careful to exclude from its Construction Investment calculation any costs since then that were incurred for the benefit of the Jualin resource.[120] As Coeur interprets the Agreement, however, no costs incurred *prior* to the time the Jualin resource was identified are eligible for exclusion from its Construction Investment, regardless of their present use, because at the time they were incurred they were necessarily only for the benefit of Kensington and at the time could not properly have been allocated to Jualin in any event.

It is true that Coeur has long known that Jualin was an exploration prospect, and it incurred exploration expenses in the hope of finding commercial quantities of gold on the Jualin properties.[121] Coeur also does not dispute that it was engaged in exploration work at Jualin at the time at least some of the questioned infrastructure expenses were incurred.[122] Finally, Coeur does not dispute that significant parts of the infrastructure in question (e.g. the processing facility, the road to the Kensington Mine, the "man camp," and others) were built on the Jualin property prior to any resource being identified at Jualin, because building them on the Kensington properties would have been prohibitively more expensive and/or physically impracticable.[123]

None of this, however, requires or even suggests that Maverix's conclusion is correct. Again, at the time the infrastructure in question was built, there was no identified

---

[120] Counsel Decl., Exh. E at MAVERIX0002970. Coeur does not believe that the post-2016 Jualin accounting is subject to dispute.
[121] *See* Counsel Decl., Exh. E at MAVERIX0002973.
[122] *See generally* Counsel Decl., Exh. B.
[123] Counsel Decl., Exh. C 166; Counsel Decl., Exh. D.

Motion for Summary Judgment
Page 33 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 34 of 36

4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

mining resource at Jualin.[124] Coeur by definition could not have undertaken a construction expense "for the benefit of" a mining resource that did not yet exist. These expenditures therefore necessarily could only have been undertaken "for the benefit" of Kensington at the time they were incurred.

Nor does it make any practical sense that these enormous expenditures were undertaken for the benefit of Jualin. Kensington was the only mining resource that had been identified at the time, and it is by far the largest out of all of the properties in the area.[125] Jualin is a much smaller prospect – it has only produced 5% of total gold production from the shared processing facility to date, and the Jualin resource body is smaller and will play out more quickly than Kensington – in fact it is expected to play out within the next year.[126] Again, the construction expenditures involved were very significant, totaling approximately $530 million.[127] It simply makes no sense to assume that Coeur undertook such significant construction expenses "for the benefit of" a small mine with no identified resources. From any technical or reasonable perspective, these expenses were clearly incurred "for the benefit of" Kensington.

It is also true, of course, that since 2016 there has been a resource identified at Jualin. The question is therefore whether the Royalty Deed requires Coeur to engage in a backward-looking re-calculation of its allocation of infrastructure expenses –

---

[124] Counsel Decl., Exh. E at MAVERIX0002973.

[125] For example, in 2017, Kensington's total proven mineral reserves were 1,284,700 tons, of which none were located at Jualin. Counsel Decl., Exh. B at MAVERIX0013117. Kensington's total probable mineral reserves were 1,676,300 tons, of which only 157,600 tons were at Jualin. *Id.*

[126] Counsel Decl., Exh. E at MAVERIX0002970.

[127] *Id.* at MAVERIX0002973.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Motion for Summary Judgment
Page 34 of 35

*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 35 of 36

4886-2647-3799\1

indisputably proper when done – based not on the situation existing at the time the expenses were incurred, but rather on subsequent developments. Coeur can discern no such requirement in the Royalty Deed. There is no express language in the Royalty Deed that can reasonably be read to impose a requirement to revise accounting from previous years. Further, the express language of the Royalty Deed is most consistently read as requiring accounting for expenses to be proper as of the time they are incurred.[128]

In short, Coeur's allocation of infrastructure expenses to Kensington (and thus its inclusion of the full amount of such expenses in its Construction Investment) was proper – indeed was required – at the time such expenses were incurred, and there is no requirement in the Royalty Deed to revisit that accounting. Coeur's claim for declaratory judgment on this issue must be granted.

## VII. CONCLUSION

For the reasons set forth above, Coeur's Motion should be granted.

DATED this 29th day of December, 2022, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By: /s/ Michael A. Grisham
    Michael A. Grisham, ABA #9411104
    Nathan Bishop, NA20777

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the foregoing was served this
18th day of January, 2023 through the Court's ECF system.

/s/ Michael Grisham

---

[128] *See* Counsel Decl., Exh. A (Royalty Deed) at 710-11 (allowing Coeur to recoup costs "incurred" during defined time periods).

Motion for Summary Judgment
Page 35 of 35
*Maverix Metals Inc. et al v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

Case 1:21-cv-00021-SLG   Document 43   Filed 01/18/23   Page 36 of 36
4886-2647-3799\1

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557