Michael A. Grisham, ABA #9411104
grisham.michael@dorsey.com
Nathan Bishop, NA20777
bishop.nathan@dorsey.com
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
(907) 276-4557

Attorneys for Defendant and
Cross-Claimant
COEUR ALASKA, INC.

## UNITED STATES DISTRICT COURT

## FOR THE STATE OF ALASKA

| | |
|---|---|
| MAVERIX METALS INC., a Canadian corporation, *et al.*,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>COEUR ALASKA, INC., a Delaware corporation,<br><br>　　　　　　　　Defendant. | Case No. 1:21-cv-00021-SLG<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ALTERNATIVE REQUEST FOR CONTINUANCE OF DISCOVERY PURSUANT TO CIVIL RULE 56(D)** |
| COEUR ALASKA, INC., a Delaware corporation,<br><br>　　　　　　　　Cross-Claimant,<br><br>vs.<br><br>MAVERIX METALS (NEVADA) INC., a Nevada corporation,<br><br>　　　　　　　　Counter-Defendant. | |

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial
Summary Judgment
Page 1 of 22
4853-9709-7291\8

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

Case 1:21-cv-00021-SLG   Document 50   Filed 02/03/23   Page 1 of 22-00021-SLG

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Defendant and Cross-Claimant Coeur Alaska, Inc., ("Coeur") opposes Plaintiff and Counter-Defendant Maverix Metals Inc., and Maverix Metals (Nevada) Inc.'s, (collectively "Maverix") motion for partial summary judgment. Should this Court not deny Maverix's motion outright, Coeur alternatively requests that this Court continue this motion so that Coeur can conduct additional necessary discovery pursuant to Civil Rule 56(d).

Maverix's motion is a classic example of "gotcha" litigation. Relying on a single prepositional phrase, Maverix asserts that the language of the Royalty Deed technically allows Coeur to recoup the cost only of facilities built "on" (as opposed to "for") the properties listed in the Royalty Deed (the "Properties"). Maverix makes this already technical argument in splendid isolation. Maverix conveniently omits several provisions of the Royalty Deed that expressly reference the facilities the parties intended for Coeur to build and seek recoupment for; Maverix fails to address how this provision fits within the parties' intent as evidenced by the contract as a whole; and Maverix fails to provide any evidence or other contractual language to demonstrate that the location of the facilities was a provision that Maverix or its predecessors bargained for, relied upon, or benefitted from, or that the use of the preposition "on" was even deliberate (the phrase "*for* the properties" appears in several other places in the contract). In fact, because Maverix improperly failed to disclose this claim until after the close of discovery, Maverix has made the technical argument on which it now demands summary disposition without Coeur having the opportunity to conduct discovery into any potentially material issue (e.g. the parties'

knowledge as to where facilities—which were all built over a decade ago in locations that have been publicly reported—were to be built, when the parties knew about this, and many others). Finally, Maverix fails to directly address the substantive result of its purely technical argument: that the vast majority of the $530,000,000 that Coeur spent to bring the Kensington mine into production would not be subject to recoupment, that Coeur should have been paying the original royalty holder and its successors royalties on production since 2010, and that Coeur now owes Maverix (which purchased the Royalty Deed in 2019) damages potentially in the tens of millions. Gotcha!

That is not how Alaska contract law works. Instead of imposing technical interpretations of isolated phrases, Alaska law requires courts to find the intent of the parties using the contract's language as a whole, extrinsic evidence, and common sense as to what parties would reasonably have agreed to do. The plain language of the Royalty Deed evidences a clear intent for Coeur to recoup the enormous costs of constructing the facilities necessary to make the Kensington mine operational, which benefitted both parties. The original counterparty to the Royalty Deed and its successors (including Maverix) never previously objected to the concept of recoupment of these construction costs, which were incurred more than a decade ago and which Coeur made using its best judgment as expressly allowed by the contract. This Court can and should enforce the parties' clear intent and course of dealing under the Royalty Deed, and should reject Maverix's unduly technical and non-contextual interpretation of the contract. This is particularly true given that Maverix's technical interpretation of the contract is not

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

**DORSEY & WHITNEY LLP**

1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

supported by any demonstration that the location of the facilities was bargained for or at all meaningful to the deed-holder, but would deprive Coeur of its most material and fundamental rights under the Royalty Deed.

Finally, given Maverix's unduly late disclosure of this claim, should the Court not see fit to deny the motion outright, it should order a Rule 56(d) continuance to allow Coeur to conduct discovery on issues such as the parties' understanding of the meaning of this provision, the materiality of this provision to the parties, the parties' reliance on the location of facilities, and Maverix's predecessors' knowledge of the location of facilities.

This Court should reject Maverix's proposal and interpret the Royalty Deed to allow Coeur to recoup its necessary construction costs as the parties intended and agreed. In the alternative, Maverix's belated raising of this claim after the discovery deadline has prejudiced Coeur, and the Court should allow Coeur to conduct additional discovery.

## I.     BACKGROUND

The Kensington Mine is an underground gold mining operation located approximately 48 miles north-northwest of Juneau, Alaska.[1] The property sits at the base of a mountain where "[t]he terrain is steep and rocky, with many avalanche zones in the winter . . . ."[2] The mine has no road access and is accessible only by boat, helicopter, or floatplane.[3]

In 1987, Coeur formed the Kensington Joint Venture with Echo Bay Mines ("Echo

---

[1] Doc. 44-2 at MAVERIX0012978.
[2] *Id.*
[3] *Id.*

Opposition to Plaintiff's Motion for Partial Summary Judgment          *Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

Bay") to acquire and operate the mine.[4]  In 1995, Coeur bought out Echo Bay's interest, giving Coeur control over the mine in exchange for the Royalty Deed at issue here.[5]  Coeur then began the technical work necessary to develop the Kensington mine, including engineering, additional exploration, and permitting, which proceeded over the course of the next decade.[6]  Coeur was required to expend over $530,000,000 to develop the infrastructure necessary to place the Kensington mine into production.[7]

Coeur had to make decisions about where it would construct the necessary facilities. Some were physically located on the Kensington parcels subject to the Royalty Deed.  But, to reduce costs and to deal with the rugged topology and geography of the site and other issues beyond Coeur's control, other facilities had to be constructed near the Kensington parcels on adjoining properties.[8]

Coeur's counter-party in the Royalty Deed, Echo Bay, was of course fully aware of the significant investment it would take to turn Kensington into an operating mine.  Echo Bay was Coeur's joint venture partner for nearly a decade and was involved in all of the feasibility studies and exploration work done during that time and so understood the work that had to be done.[9]  Moreover, the terms of the Royalty Deed itself specifically set forth the parties understanding that to make Kensington a working mine, Coeur would need to

---

[4] *Id*. at MAVERIX0013013.
[5] *Id*.
[6] *Id*.
[7] *See id*.; Doc. 44-6 at CM_004439.
[8] Affidavit of Mitchell J. Krebs ("Krebs Aff.") ¶¶ 4-6.
[9] Doc. 44-2 at MAVERIX0013013-14.

Opposition to Plaintiff's Motion for Partial Summary Judgment        *Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*
Page 5 of 22        Case No. 1:21-cv-00021-SLG
4853-9709-7291\8

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

develop and build "a mine and mill, beneficiation facility, or processing plant . . . mining and milling or other processing equipment and machinery . . . [and] ancillary works such as roads, utilities, tailings disposal facilities, and camp facilities…."[10]  The Royalty Deed clearly states that the purpose of these facilities was to assist in production of "Gold Minerals produced from the Properties" and otherwise "to serve the properties."[11]

Because the parties knew that such a significant investment would be needed to turn Kensington into an operational mine, the Royalty Deed allowed Coeur to recoup construction costs incurred prior to the royalty holder receiving any payout.  Coeur would be able to recoup "[d]irect capital costs for the construction of a mine and processing facility…."[12]  Coeur has included these costs in all of its recoupment statements though Maverix now disputes that Coeur may include all of these costs under the terms of the Royalty Deed.

## II.    ARGUMENT

Maverix's Royalty Deed interpretation is unreasonable and conflicts with the clear statement of the parties' expectations set forth in the contract and course of dealing.  Coeur and Echo Bay knew that an enormous investment in the construction of mining facilities would be necessary to make the Kensington mine operational.  The Royalty Deed's express language acknowledges that the parties intended for Coeur to be able to recoup those construction costs—indeed, because the necessary investment was so significant, this is

---

[10] Doc. 42-1 at MAVERIX0000710-11.
[11] *Id.*
[12] *Id.* at MAVERIX0000710.

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

one of the most fundamental and material rights the contract gave Coeur. The Royalty Deed's express language further acknowledges that the parties intended for Coeur to have sole discretion over the Kensington mine's development and operation, including decisions like the location of facilities. Maverix and its predecessors knew or should have known that Coeur had built the new facilities, the locations of those facilities, and that Coeur expected to recoup those costs before royalty payments would be due. Finally, there is no evidence that Echo Bay had any enforceable interest in the location of these facilities at all or that locating the facilities "on" the properties was a material aspect of the performance Echo Bay expected to receive. In this light, Maverix's narrow and out of context interpretation of the Royalty Deed that strictly limits Coeur's ability to develop the mine and disallows such recoupment is unreasonable and untenable, and Maverix has waived any right to claim otherwise. Coeur must be allowed to recoup all of the construction costs incurred to build Kensington's facilities.

## A. Summary Judgment Standard.

Summary judgment is warranted when no material issues of fact exist for trial.[13] If the moving party has shown an initial absence of any genuine issue of material fact, the nonmoving party has the burden to establish the existence of an issue of fact regarding an element essential to that party's cause.[14] Courts view the evidence in a light most favorable to the non-moving party.[15]

---

[13] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).
[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[15] *Warren*, 58 F.3d at 441. *See also Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1130-31 (9th

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

**B.** **Maverix's Predecessors Have Waived Any Argument That Coeur's Construction Costs Are Not Recoupable.**

Maverix's claim takes issue with facilities' construction costs Coeur incurred over a decade ago. Coeur constructed all of the facilities necessary for the mine before it began commercial production in 2010.[16] Maverix and its predecessors, Kinross Gold Corporation and Echo Bay, either knew or should have known about the locations of these facilities years ago, yet never raised any concern about the buildings' locations.[17] Maverix has now waived any right to claim that the costs are incorrectly included in Coeur's recoupment calculations.

> When a party to a contract is aware of conduct on the part of the other party that constitutes a breach and fails to protest the breach while continuing to perform the contract, that party may be held to have waived its right to rely on the breach in subsequent litigation."[18] "'[N]eglect to insist upon a right,' . . . may result in an implied waiver, or an estoppel, when 'the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question'.[19]

---

Cir. 2015) ("On cross-motions for summary judgment, we evaluate each motion independently, giving the nonmoving party in each instance the benefit of all reasonable inferences." (internal quotation marks omitted)).

[16] *See* Coeur Mining, "Kensington Gold Operations Alaska, Technical Report Summary," Dec. 31, 2021 at p. 2-1. Available at https://www.coeur.com/_resources/pdfs/Technical%20Reports/Kensington%20TR.pdf?v=1.001; Doc. 43-2 at MAVERIX0013015 ("Construction of nearly all surface facilities, except the tailings disposal facility, was completed in 2007. . . . Construction on the [tailings disposal facility] resumed in 2009 . . . .").

[17] Notably, Maverix uses a 2010 Technical Report that it possessed as evidence of the facilities' locations demonstrating its prior knowledge of the same.

[18] *Carr-Gottstein Foods Co. v. Wasilla, LLC*, 182 P.3d 1131, 1136 (Alaska 2008).

[19] *Id*. (quoting *Anchorage Chrysler Ctr., Inc. v. Daimler Chrysler Corp.*, 129 P.3d 905, 917 n.35 (Alaska 2006)).

Opposition to Plaintiff's Motion for Partial                    *Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*
Summary Judgment
Page 8 of 22                                                    Case No. 1:21-cv-00021-SLG
4853-9709-7291\8

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

For example, in *Wasilla, LLC*, a landlord alleged that its supermarket tenant breached their contract.[20] The lease agreement provided that the supermarket would use the property for a "general food supermarket" and sell only items sold "in other general food supermarkets."[21] The lease also prohibited subleasing without the landlord's consent.[22] The landlord claimed that the tenant breached the agreement when it moved a liquor store onto the premises.[23]

The Alaska Supreme Court found that the landlord had waived its breach claim.[24] The Court held that the landlord knew about the move, in part because the landlord had financial statements showing liquor sales.[25] The Court further noted that the landlord's failure to act earlier prejudiced the tenant, because "[t]imely notice that the relocation violated the lease would have afforded [the tenant] the opportunity to reconsider its position."[26]

Coeur has been similarly prejudiced by the royalty holders' failure to earlier raise concerns about the construction. The locations of the facilities have been public information since at least 2010, including in publicly filed technical reports that contain detailed maps showing infrastructure locations that have been available on the Coeur's website.[27] Coeur included the costs of these constructions in its 2017 recoupment

---

[20] *Id.* at 1134.
[21] *Id.* at 1133.
[22] *Id.*
[23] *Id.* at 1134.
[24] *Id.* at 1138.
[25] *Id.*
[26] *Id.* at 1139.
[27] *See* Doc. 41-3 (2010 Technical Report on which Maverix relies as evidence of facilities'

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

statements given to Kinross. [28]  Kinross raised concerns with some aspects of this recoupment statement but took no issue with the construction costs.[29]  Kinross even visited the mine and would have seen the physical facilities in 2019,[30] yet still it raised no concerns about the facilities' locations or insisted that their construction costs be excluded.  Timely notice would have allowed Coeur to reconsider its operations or accounting.  Maverix's predecessors implicitly waived its right to contest costs based on the facilities' locations, and Maverix cannot assert such a breach here.

## C. The Parties' Expectation and the Royalty Deed's Principal Purpose Was for Coeur to Build and Be Able to Recoup Costs for the Kensington Mine Facilities.

"The goal of contractual interpretation is to give effect to the reasonable expectation of the parties."[31]  The Alaska Supreme Court has noted that, when interpreting a contract, "[t]he first and generally most important rule is that '[w]ords and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.'"[32]  "[T]he court will if possible give effect to all

---

locations).  These reports have been publicly available on Coeur's website through the course of Kensington's development.  *See* https://coeur.com/_resources/pdfs/Technical%20Reports/Kensington%20TR.pdf?v=1.001 (last checked Feb. 3, 2023).

[28] Affidavit of Counsel ("Counsel Aff."), Exh. A.  Note, Coeur's calculation of its investment prior to commercial production has largely remained unchanged since it issued this quarterly statement in 2017.  *Compare id.* at CM_013242 ($504,221,000) *with* Doc. 41-4 ($501,232,886).

[29] Doc. 44-8.

[30] *See* Doc. 44-10 (scheduling site visit for Kinross personnel).

[31] *Beardsley v. Robert N. Jacobsen & Darlene F. Jacobsen Living Tr.*, 472 P.3d 500, 504 (Alaska 2020) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 383 (Alaska 2004)).

[32] *Estate of Polushkin v. Maw*, 170 P.3d 162, 168 (Alaska 2007) (quoting Restatement (Second) of Contracts § 202(1) (1981)).

---

Opposition to Plaintiff's Motion for Partial Summary Judgment
*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*
Page 10 of 22
Case No. 21-cv-00021-SLG
4853-9709-7291\8

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable."[33]

The Royalty Deed's principal purpose is to give the royalty holder an interest in gold production after Coeur has built, developed, and made commercially viable the Kensington mine. The Royalty Deed explicitly contemplates that Coeur will incur "[d]irect capital costs for the construction of a mine and processing facility," "operating costs," and "[e]xploration and [d]evelopment costs."[34] The Royalty Deed also expressly contemplates that Coeur will build and be permitted to recoup costs expended for the "construction of a mine and mill, beneficiation facility, or processing plant, . . . mining and milling or other processing equipment and machinery, . . . [and] construction of ancillary works such as roads, utilities, tailings disposal facilities, and camp facilities to serve the Properties."[35] Even Maverix has admitted that Coeur had to construct these facilities to produce gold from Kensington.[36] Furthermore, the Royalty Deed expresses the parties' expectation that Coeur, not Echo Bay (nor the royalty holder), would operate the mine by giving Coeur "sole discretion" over decisions about the "timing, manner, method and amounts of . . . exploration and production."[37]

---

[33] *Earthmovers of Fairbanks v. State*, 644 P.2d 238, 240 (Alaska 1982) (quoting *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1976)).
[34] Doc. 41-1 at MAVERIX0000710-12.
[35] *Id*. at MAVERIX0000710-11.
[36] Counsel Aff., Exh. B at 88:9-89:2.
[37] *See* Doc. 41-1 at MAVERIX0000717 ("Coeur, by the grant of this Net Returns Royalty or otherwise, shall not be deemed subject to any duty to diligently explore for or produce Gold Minerals from the Properties . . . .").

Opposition to Plaintiff's Motion for Partial Summary Judgment
*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Coeur fulfilled the Royalty Deed's purpose by building the Kensington mine. The Royalty Deed's express language indicates that Coeur should be able to recoup its costs of doing so. The construction of the facilities benefits both parties, as without this no gold could be produced from Kensington at all. This purpose should be given great weight and any interpretation that would conflict with the parties' expectations regarding construction and recoupment should be viewed skeptically.

Maverix offers just such a conflicting interpretation. Maverix encourages the Court to place an outsized weight on the prepositional phrase "on the Properties" while ignoring the remainder of the Royalty Deed that seeks to allow Coeur to recoup its construction investment undertaken for the benefit of the Kensington mine (and both parties), as well as all exploration and development costs "connected with" exploring and developing the Properties. Specifically, Maverix encourages the Court to ignore the remainder of Section 2(a), which explicitly "includ[es]" facilities to produce and mill, treat or process Gold Minerals produced <u>from the Properties</u>," equipment and machinery for the same, and "ancillary works . . . <u>to serve the Properties</u>."[38] These prepositional phrases underscore the purpose of Coeur's promise in the Royalty Deed: building an operational mine. In turn, the Royalty Deed's primary purpose is to give Coeur the means to construct a mine, not to limit how or where Coeur builds that mine. This Court should not adopt an interpretation that undermines the Royalty Deed's primary purpose.

---

[38] *Id.* at MAVERIX0000710-12 (emphasis added).

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

Page 12 of 22

Case No. 1:21-cv-00021-SLG

4853-9709-7291\8

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

### D. Maverix's Proposed Interpretation Is Unreasonable Because The Royalty Deed Gave Coeur the Right to Use Its Business Judgment When Selecting Facility Locations and It Reasonably Relied on That Right; Locating Facilities "On" The Properties Was Not Material or Beneficial to Maverix or Essential to the Contract, and the Loss to Coeur Grossly Outweighs Any Potential Harm to Maverix From a Breach.

Maverix's interpretation is also unreasonable because it ignores the context surrounding the Royalty Deed's issuance. "One important guide to the meaning of a contract is that interpretations that give a reasonable meaning to a contract are preferred to those that impart an unreasonable meaning."[39] "An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract."[40] In the context of mining agreements, the Alaska Supreme Court has assumed that the parties "expected to make a profit" and "would act with reasonable business judgment."[41]

---

[39] *Estate of Polushkin*, 170 P.3d at 172; *see also id.* (quoting Restatement (Second) of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." (alteration in original))).

[40] *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010). *See also Gore v. Beren*, 867 P.2d 330, 337 (Kan. 1994) ("In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by law. Results which vitiate the purpose or reduce terms of the contract to an absurdity should be avoided."); *Born v. Hammond*, 146 A.2d 44, 47 (Md.1958) ("[I]f a contract was susceptible of two constructions, one of which would produce an absurd result and the other of which would carry out the purpose of the agreement, the latter construction should be adopted."); *Huntington on the Green Condo. v. Lemon Tree I-Condo.*, 874 So. 2d 1, 5 (Fla. Dist. Ct. App. 2004) ("[I]f one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would accord with reason and probability.").

[41] *United States Smelting, Ref. & Mining Co. v. Wigger*, 684 P.2d 850, 854-55 (Alaska 1984) (rejecting "unreasonable interpretation . . . that the lessor would enter into a contract where the lessee could act without good business judgment"). While the contract interpretation at issue in *Wigger* are not perfectly analogous to the Royalty Deed interpretation at issue here, the same common sense principles apply.

Opposition to Plaintiff's Motion for Partial Summary Judgment
*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*
Page 13 of 22 — Case No. 1:21-cv-00021-SLG
4853-9709-7291\8

DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Maverix offers a narrow, highly technical Royalty Deed interpretation that Coeur could build the mine facilities only "on" the land described in the Royalty Deed. But Maverix provides no evidence that Coeur and Echo Bay actually intended to limit recoupment of construction costs to only development "on" enumerated parcels or that such a requirement was so beneficial or material to Echo Bay that failure to comply with it could justify depriving Coeur of its central benefit under the contract.

Such a reading would defy business sense given the topography and geographical location of the properties. The Kensington mine is located in an undeveloped, mountainous area.[42] Not every acre is suitable for construction.[43] When Coeur invested hundreds of millions to build the mining facilities and infrastructure required to operate the Kensington mine, it had to make practical decisions about which facility locations would be suitable and cost effective.[44] Echo Bay, as the mine's former operator, would have been intimately familiar with the region and the difficulties Coeur would face when constructing the Kensington mine's facilities. Rather than limit itself to locations subject to the Royalty Deed, Coeur used good business judgment to construct the facilities in the most efficient locations for their intended purpose, on or near the Kensington mine properties.[45] The only reasonable interpretation of the Royalty Deed, when viewed as a whole, is that Coeur would i) construct the necessary facilities to bring the mine into production, ii) use its reasonable judgment in deciding how and where to construct these facilities, and iii) recoup

---

[42] Doc. 44-2 at MAVERIX0012978.
[43] Krebs Aff. ¶¶ 4, 6.
[44] *Id.* ¶¶ 4-5.
[45] *Id.* ¶¶ 4-6.

**DORSEY & WHITNEY LLP**

1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial Summary Judgment                    *Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

Case No. 1:21-cv-00021-SLG

4853-9709-7291\8

the construction costs incurred before paying the royalty. In making those decisions over a decade ago, Coeur reasonably relied—to the tune of $530MM—on its right to exercise its reasonable business judgment as to the location of facilities.

If Maverix's proposed interpretation were correct, it would yield absurd results that defy common sense, let alone good business judgment. According to Maverix's theory, Coeur should have incurred millions of dollars in additional expenses by constructing the facilities only "on" the parcels enumerated in the Royalty Deed. Besides being a waste of money, doing so would have negatively impacted Echo Bay and Maverix by delaying the royalty payments until the significant additional expenses imposed by requiring inefficient locations were recouped. Moreover, given the topography of the region, it is unclear that Coeur could have constructed all of the required facilities on the enumerated parcels. If not, Maverix's interpretation implies that the parties intended that those facilities not be constructed at all and the Kensington mine be prematurely shut down, yielding no royalty payments.[46]

Maverix's interpretation is patently unreasonable. Coeur used its "sole discretion" and good business judgment when it constructed the facilities necessary to operate the Kensington mine. Echo Bay and Coeur intended that Coeur would be able to recoup these

---

[46] The only alternative is that, under Maverix's interpretation, the parties intended for Coeur to build the necessary facilities offsite at Coeur's sole, non-recoupable expense. This is also absurd. The parties clearly understood the enormous economic investment required to make the Kensington mine operational, as they set forth a list of the required facilities in the contract. The notion that Coeur would undertake to construct these facilities at its own expense without the right of prior recoupment is absurd. It would raise a significant risk that Coeur could never recover its investment and would significantly and materially increase the risk that the Kensington mine would never be commercially viable.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

costs. This Court should reject Maverix's unreasonable interpretation and confirm the parties' reasonable expectation that Coeur would act in the best interest of both parties by minimizing costs when possible while still being able to recoup the costs under the Royalty Deed.

Put differently, it is clear that any breach of the provision Maverix relies upon, requiring facilities to be built "on" the Properties, could not be so material as to justify depriving Coeur of one of its central benefits under the contract, on which it indisputably relied. The law has long been clear that not every technical breach of a contract entitles a party to recovery, but rather only those breaches that are material. "A breach is material if it goes to the 'essence' of the contract or if it is 'of such a nature as to defeat the object of the parties in making the contract.'"[47] Maverix has provided no evidence, or even any context, that would support the notion that the location of facilities "on" the Properties was material or beneficial to Echo Bay in any way, much less that it was "essential" to the contract or that breach of such a condition would "defeat the object" of the contract. The ability to recoup the enormous ($530MM) costs of the facility and infrastructure construction necessary to bring Kensington into production, on the other hand, was clearly and expressly essential to Coeur's bargain, and Coeur clearly relied on that right when making the enormous $530MM investment that it completed over a decade ago.

---

[47] 14 Richard A. Lord, Williston on Contracts §43.6, at 578-79 (4th ed. 2000); *see also Estate of Lampert ex rel. Thurston v. Estate of Lampert ex rel. Stauffer*, 896 P.2d 214, 219 (Alaska 1995) (holding that plaintiff may be entitled to rescission if defendant's actions "destroyed the 'essence' of the bargain." (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 372-73 (1981))).

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

4853-9709-7291\8

**DORSEY & WHITNEY LLP**

1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

### III. IN THE ALTERNATIVE, COEUR SHOULD BE GIVEN THE OPPORTUNITY TO CONDUCT RELEVANT DISCOVERY PURSUANT TO CIVIL RULE 56(D).

Maverix has employed an impermissible litigation strategy that would prevent Coeur from defending itself by raising a new theory of its claim _after_ the discovery deadline. This strategy has severely prejudiced Coeur, and Maverix should not be entitled to summary judgment until Coeur has had the opportunity to conduct necessary discovery. Should this Court not see fit to deny Maverix's motion outright for the reasons set forth above, this Court should permit Coeur to take discovery on this claim under Fed. R. Civ. P. 56(d).

At no point before the close of discovery did Maverix indicate that its claims were based on the theory that some of the construction costs for facilities necessary for the Kensington mine should not have been included in Coeur's recoupment calculations. This theory is not referenced in Maverix's expert reports or discovery responses made prior to the close of discovery.[48] The first hint that Maverix was at all concerned about the location of the mine's facilities occurred on December 6, 2022, during the deposition of Coeur's chief accounting officer, when Maverix's counsel asked questions about the location of facilities.[49] On December 15, 2022, discovery closed.[50]

On December 26, 2022, Maverix issued supplemental interrogatory responses

---

[48] _See, e.g._, Counsel Aff., Exhs. C, D, & E.
[49] _See, e.g._, Counsel Aff., Exh. F at 173-74. To be clear, counsel for Maverix did not at that time disclose the claim on which it bases its claim for summary relief. _Id._
[50] Doc. 27 (Order Re: Unopposed Motion to Extend Pretrial Deadlines).

Opposition to Plaintiff's Motion for Partial Summary Judgment       _Maverix Metals Inc. et al. v. Coeur Alaska, Inc._

4853-9709-7291\8

which, for the first time, articulated its claim that the construction costs should be excluded from the recoupment based on the location of the facilities.[51]  Coeur issued an interrogatory early on in discovery asking Maverix to "[d]escribe in detail what costs in the 2020 Q3 Recoupment Statement's calculation of Construction Investment are 'costs disallowed by the Royalty Deed' as asserted in Paragraph 58 of the Complaint."[52]  Yet, Maverix waited six months and until after the close of discovery before it added a new theory that "Coeur improperly calculated the Base Recoupment Value portion of [Coeur's Construction Investment] by including disallowed costs (1) associated with construction of facilities off the Kensington Properties, and (2) that benefit the Jualin deposit."[53]  Maverix's motion for summary judgment on this theory followed just three days later, on December 29, 2022.

By improperly introducing a new theory after the close of discovery, Maverix has severely prejudiced Coeur and violated its duty to timely supplement its disclosures and discovery responses.[54]  Maverix's belated disclosure has no justification.  Its motion for summary judgment relies on a publicly-issued report from 2010 that was also in Maverix's direct possession.  From the time Maverix filed its complaint, it had the information necessary to articulate the basis of its theory, yet it refrained from disclosing that theory until after the discovery deadline.  The Court would be justified in rejecting Maverix's claim based on this discovery misconduct alone.[55]

---

[51] Doc. 44-29 at 8.
[52] *Id*. at 3.
[53] Doc. 44-29 at 8.
[54] *See* Fed. R. Civ. P. 26(e).
[55] *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial Summary Judgment
Page 18 of 22

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*
Case No. 3:21-cv-00021-SLG

4853-9709-7291\8

At minimum, however, if the Court plans to let Maverix pursue this claim and does not reject this claim outright for the reasons set forth above, Coeur should be granted a Civil Rule 56(d) continuance to conduct further discovery.[56]  Maverix's new claim raises numerous factual issues Coeur must be allowed to investigate to be able to fairly present a defense.  To the extent Maverix disagrees with Coeur's assertion that Maverix and its predecessors have waived their claim regarding construction expenses because they knew or should have known about the construction years ago, discovery will be necessary to determine when Maverix and its predecessors were aware of the location of facilities. Additionally, even if the Royalty Deed did require construction only "on" the Kensington properties, Coeur asserts that any breach of such a provision could not be material.  Coeur should be permitted to conduct discovery on issues including: the parties' intent in using the prepositional phrase "on the Properties" (the phrases "for the Properties" and "to serve the Properties" also appear in various places in the Royalty Deed—the phrase "on the Properties" could have been a scrivener's error); Echo Bay's reliance or expected benefit (if any) from limiting the facilities' locations to the Kensington Properties; whether Coeur's location of facilities is supported by sound business judgment; whether Maverix will still receive the entire benefit it reasonably expected if the construction costs are

---

required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trail, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: . . . (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).").

[56] *See* Fed. R. Civ. P. 56(d)(2) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) allow time to obtain affidavits or declarations or to take discovery . . . .").

4853-9709-7291\8

recouped; the damage that Coeur will suffer if it is unable to recoup the hundreds of millions of dollars it invested to construct the mine's necessary facilities, and; whether Coeur's choices of location comport with the standards of good faith and fair dealing.[57] Furthermore, full litigation on this claim will require supplementation of (or additional) expert reports on the actual locations of the facilities,[58] the suitability of alternative locations, and Maverix's purported damages (or lack thereof).

In sum, Maverix's new theory introduces numerous issues of material fact that Coeur has had no chance to investigate through discovery. If this Court is not inclined to deny Maverix's motion outright, this Court should defer ruling on the motion, allow additional time for discovery, and adjust case deadlines accordingly.

## IV. CONCLUSION

Maverix's Motion for Partial Summary Judgment is a clear demonstration that this case is little more than "gotcha" litigation. Maverix relies on a technical reading of a single prepositional phrase to undermine Coeur's right to one of the most fundamental benefits it was to receive under the Royalty Deed. In doing so, it ignores the express intent and

---

[57] *Bachner Co. v. Dep't of Admin., Div. of Gen. Servs.*, 468 P.3d 703, 709 (Alaska 2020) (citing Restatement (Second) Of Contracts § 241 (Am. Law. Inst. 1981)) (providing the five elements of the test for material breach as: "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated [in damages] for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform . . . will suffer forfeiture; (d) the likelihood that the party failing to perform . . . will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the party failing to perform . . . comports with standards of good faith and fair dealing").

[58] Maverix's own briefing acknowledges that there is a genuine issue of material fact regarding the facilities' locations, as not even Maverix is sure which buildings it believes are not on the Properties. Doc. 41 at 6 ("These are just eight examples of costs included in the recoupment amount for facilities built on the Jualin property; and . . . there are certainly more.").

Opposition to Plaintiff's Motion for Partial Summary Judgment

*Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*

understanding of the parties regarding what facilities were to be built (and the costs Coeur was to be allowed to recoup), and Coeur's right to exercise its reasonable business judgment regarding the location of the facilities, all of which was completed over a decade ago in full public view without a peep from the deed-holder. It ignores the benefit the deed-holder received from locating facilities in less expensive locations and provides no evidence or suggestion that the location of facilities was beneficial or material to the deed-holder. It raised this issue for the first time after the close of discovery. It would use a strict technical interpretation of a single, uncontextualized phrase—which there is no evidence the deed-holder bargained for, relied upon, or benefitted from—to deprive Coeur of an essential part of its bargain and to provide Maverix with millions in windfall damages in the form of unspecified royalty payments dating back to 2010. Gotcha!

Maverix's motion is little more than a lawyer's clever wordplay. It is inconsistent with the clear language and express intent of the contract, inconsistent with the principles of Alaska contract law, and would deprive Coeur of one of its most material and essential rights under the contract in favor of an immaterial technical claim of breach that deprived Maverix of nothing. For the reasons set forth above, Maverix's motion should be denied. Should this Court not see fit to deny the motion outright, there should be a continuance in this matter to allow Coeur to conduct discovery on this claim due to Maverix's improperly late disclosure.

DATED this 3rd day of February, 2023, at Anchorage, Alaska.

**DORSEY & WHITNEY LLP**
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

DORSEY & WHITNEY LLP

By: /s/ Michael A. Grisham
        Michael A. Grisham, ABA #9411104
        Nathan Bishop, NA20777

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the
foregoing was served this 3rd day of
February, 2023, through the Court's
ECF system.


By: /s/ Nathan Bishop
        Nathan Bishop NA20777

**DORSEY & WHITNEY LLP**

1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Opposition to Plaintiff's Motion for Partial          *Maverix Metals Inc. et al. v. Coeur Alaska, Inc.*
Summary Judgment
4853-9709-7291\8