# EXHIBIT E

**Maverix's Responses and Objections to**

**Coeur Alaska, Inc.'s**

**First Set of Interrogatories**

James E. Torgerson (Bar No. 8509120)
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone: (907) 263-8404
Facsimile: (907) 277-1920
jim.torgerson@stoel.com

Jonathan W. Rauchway (*Admitted pro hac vice*)
Shannon Wells Stevenson (*Admitted pro hac vice*)
Kristin L. Arthur (*Admitted pro hac vice*)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
jon.rauchway@dgslaw.com
shannon.stevenson@dgslaw.com
kristin.arthur@dgslaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MAVERIX METALS INC., a Canadian corporation and MAVERIX METALS (NEVADA) INC., a Nevada corporation, | |
| Plaintiffs, | |
| v. | |
| COEUR ALASKA, INC., a Delaware corporation, | |
| Defendant. | Case No. 1:21-cv-00021-SLG |

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                     1

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO COEUR ALASKA, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Maverix Metals Inc. and Maverix Metals (Nevada) Inc. (collectively "Maverix") submit the following responses and objections to Coeur Alaska, Inc.'s ("Coeur") First Set of Interrogatories.

## GENERAL OBJECTIONS

Maverix hereby incorporates these general objections in each of its responses to Plaintiffs' First Set of Interrogatories:

1.    Maverix has not yet completed discovery, investigation, or preparation for trial. Accordingly, its responses herein are based on information presently available and given without prejudice to its right to further supplement or modify based upon the discovery of additional or different information.

2.    Maverix reserves all objections and questions as to the competency, relevance, materiality, privilege, propriety, admissibility, and any and all other objections on any grounds that would require the exclusion of any information from evidence if the same were sought to be admitted at trial.

3.    Maverix objects to Plaintiffs' definitions to the extent they purport to impose obligations or expectations of Maverix that are above or beyond any requirements created upon Maverix under the Federal Rules of Civil Procedure. This includes definitions or instructions that purport to require that Maverix obtain information or documents from entities other than Maverix.

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                     2

**DAVIS GRAHAM & STUBBS LLP**
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

4. Maverix objects to these Interrogatories to the extent they seek information protected by the attorney-client privilege, work product doctrine, and/or consulting expert privilege. Maverix maintains all applicable privileges.

## RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 1

Identify all statements, representations, or other communications made by Maverix's predecessor-in-interest in the Royalty Agreement to Maverix during Maverix's preparations or negotiations to purchase the Royalty Agreement regarding:

· Coeur's accounting practices related to the Kensington Mine,

· the calculation of Coeur's Construction Investment,

· Coeur's costs incurred in exploring for, mining, extracting, removing and transporting to a mill, Gold Minerals at the Kensington Mine,

· Coeur's Recoupment Statements for the Kensington Mine

· Coeur's exploration, construction, or development costs related to the Jualin deposit or Jualin properties, or to any other portion of the Kensington Mine not included in the Properties

· The anticipated time frame within which the Net Returns Royalty would become payable.

## RESPONSE:

Maverix objects to this Interrogatory because it is a multi-part interrogatory that

contains at least six discrete subparts and therefore counts as at least six interrogatories. *Nye v. Viking Spirit, Inc.*, No. 1:17-cv-00002-SLG, 2018 U.S. Dist. LEXIS 106805, at **6–8 (D. Alaska June 26, 2018) (discrete subparts count as separate interrogatories); Alaska Local Rule (Civil) 33.1. Maverix further objects to this Interrogatory to the extent it calls for "all statements, representations, or other communications made by Maverix's predecessor-in-interest." If interpreted literally, this Discovery Request would require recitation of every word written or spoken between two entities comprised of multiple employees. This Discovery Request is overly broad, unduly burdensome, and not proportional to the needs of the case. Subject to and without waiving these objections, and pursuant to Federal Rule of Civil Procedure 33(d), Maverix directs Coeur to the following bates ranges encompassing communications between Maverix and its predecessor-in-interest:

  a) **Coeur's accounting practices related to the Kensington Mine,**
  MAVERIX0007563, MAVERIX0007416, MAVERIX0007419,
  MAVERIX0000329, MAVERIX0000786–840, MAVERIX0001524–30,
  MAVERIX0001563–72.

  b) **the calculation of Coeur's Construction Investment,**
  MAVERIX00000038–116, MAVERIX0000786–840, MAVERIX00000155–
  242, MAVERIX0001524–30, MAVERIX0001563–72.

  c) **Coeur's costs incurred in exploring for, mining, extracting, removing**

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG          4

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

**and transporting to a mill, Gold Minerals at the Kensington Mine,**

MAVERIX0000328–29, MAVERIX0001524–1530, MAVERIX0001563–72.

**d) Coeur's Recoupment Statements for the Kensington Mine**

MAVERIX0000786–840, MAVERIX00002055–2157, MAVERIX0004705,

MAVERIX0001563–72.

**e) Coeur's exploration, construction, or development costs related to the Jualin deposit or Jualin properties, or to any other portion of the Kensington Mine not included in the Properties**

MAVERIX0000786–840, MAVERIX0001524–1530, MAVERIX0001563–72.

**f) The anticipated time frame within which the Net Returns Royalty would become payable.**

MAVERIX0000786–840

| MAVERIX0007038, | MAVERIX0007064, | MAVERIX0006431, |
| MAVERIX0006433, | MAVERIX0006436, | MAVERIX0007532, |
| MAVERIX0007462, | MAVERIX0007408, | MAVERIX0007409, |
| MAVERIX0007410, | MAVERIX0007413, | MAVERIX0007416, |
| MAVERIX0007419, | MAVERIX0002046, | MAVERIX0002047 |

## INTERROGATORY NO. 2

Identify all Maverix employees or agents who were involved in any negotiations or communications regarding Maverix's purchase of the Royalty Agreement.

## RESPONSE:

Maverix objects to this Interrogatory to the extent it calls for "all Maverix

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG          5

employees" and because it has no time limit and seeks information from employees regardless of level of responsibility. Maverix further objects that this interrogatory is unduly intrusive and burdensome to the extent it seeks personal identification information, such as date of birth and residential address, telephone number, and email addresses. Subject to and without waiving these objections, Maverix provides the following list of individuals who may have communicated regarding the purchase of the Royalty Agreement, all of whom may only be contacted through counsel:

1. Dan O'Flaherty, Chief Executive Officer at Maverix.

2. Ryan McIntyre, President at Maverix.

3. Matt Fargey, Chief Financial Officer at Maverix.

4. Brendan Pidcock, VP Technical Services at Maverix.

5. Brent Bonney, VP Corporate Development at Maverix.

6. Peter Winters, Financial Controller at Maverix.

## INTERROGATORY NO. 3

Identify all all [sic] agents or employees of Maverix's predecessor in interest in the Royalty Agreement who communicated with Maverix regarding the Royalty Agreement.

## RESPONSE:

Maverix objects that this Interrogatory is unduly intrusive and burdensome to the extent it seeks personal identification information, such as date of birth and residential address. Subject to and without waiving these objections, Maverix states as follows:

**DAVIS GRAHAM & STUBBS LLP**
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

1.  Dennis McHarness, Vice President, Global Lands at Kinross Gold Corporation.

2.  Stephen Gray, Senior Manager at Kinross Gold Corporation.

3.  David Donnelly, Director of Lands at Kinross Gold Corporation.

4.  Luke Crosby, Assistant General Counsel at Kinross Gold Corporation.

## INTERROGATORY NO. 4

Identify all Maverix employees or agents who communicated with Coeur regarding, or were involved in the review of, Coeur's Recoupment Statements or Coeur's calculation of its Construction Investment from the date of Maverix's purchase of the Royalty Agreement to the present day.

## RESPONSE:

Maverix objects to this Interrogatory because this information is already in Coeur's possession, custody, or control. Maverix further objects that this Interrogatory is unduly intrusive and burdensome to the extent it seeks personal identification information, such as date of birth and residential address, telephone number, and email addresses. Subject to and without waiving these objections, Maverix provides the following list of individuals who may have communicated regarding the purchase of the Royalty Agreement, all of whom may only be contacted through counsel:

1.  Dan O'Flaherty, Chief Executive Officer at Maverix.

2.  Ryan McIntyre, President at Maverix.

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG            7

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

3.  Matt Fargey, Chief Financial Officer at Maverix.

4.  Brendan Pidcock, VP Technical Services at Maverix.

5.  Brent Bonney, VP Corporate Development at Maverix.

6.  Peter Winters, Financial Controller at Maverix.

## INTERROGATORY NO. 5

Describe in detail the nature of Maverix's claimed reliance on Coeur's calculation of its Construction Investment as described in Paragraph 41 of the Complaint and "the accuracy of Coeur's Recoupment Statements" as described in Paragraph 40 of the Complaint, including but not limited to all steps taken and any expenses incurred or investments made due to any such reliance.

## RESPONSE:

Maverix objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case as it relates to "all steps taken and any expenses incurred or investments made" because the phrase may encompass all aspects of Maverix's business including financial projections, performance measurement, money allocation, investment opportunities, and forecasting and analysis. Maverix further objects to this Interrogatory to the extent it seeks disclosure of information prior to the time required by applicable rules and the Court's Scheduling and Planning Order. Subject to and without waiving these objections, Maverix states that it relies on true, proper, and accurate reporting from all the assets it owns—including the Royalty Agreement—for the proper

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                8

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

operation and functioning of its business. This includes the Recoupment Statements that Coeur provided to Echo Bay Exploration, Inc. ("Echo Bay") and/or Kinross Gold Corporation beginning in 2017, and continuing to the instant dispute over Coeur's calculations in its Recoupment Statements. Maverix relied on all of the financial accountings and projections that Coeur created and Maverix would have changed its investment approach and analysis if other or different financial information had been disclosed. Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

## INTERROGATORY NO. 6

Describe in detail what costs included in the 2020 Q3 Recoupment Statement's calculation of Construction Investment are costs Coeur incurred that benefit other properties not subject to the Royalty Deed as asserted in Paragraph 58 of the Complaint? Your answer should include, but not be limited to, the specific nature of the costs, the specific provisions of the Royalty Deed upon which you rely in making this assertion, and any other facts upon which you base this assertion.

## RESPONSE:

Maverix objects to this Interrogatory because is seeks information that is not in Maverix's possession, custody, or control, but rather is maintained by Coeur. Maverix further objects to this Interrogatory because it seeks premature expert discovery. Maverix

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG            9

will disclose expert witnesses and expert opinions as required by the Federal Rules of Civil Procedure and the Court's Scheduling and Planning Order.

Subject to and without waiving these objections, Maverix states that in July 2020, it informed Coeur that, based on Maverix's analysis of the Recoupment Statements that Coeur had generated since 2017, Coeur could achieve Recoupment in three years. In response, Coeur added approximately $158 million in additional costs in its 2020 Q3 Recoupment Statement, which Coeur now contends it is entitled to recoup under the Royalty Agreement before it must begin paying a royalty to Maverix. This was no small adjustment; it nearly doubled the amount remaining until Recoupment from what was shown on Coeur's 2020 Q2 Recoupment Statement, which Coeur had provided to Maverix just a few months earlier. Maverix has requested, but has not yet received, the detailed back-up documentation from Coeur for the approximately $158 million in additional costs claimed by Coeur as part of its Construction Investment. However, based on representations by Coeur and Maverix's preliminary analysis of Coeur's Recoupment Statements and other documents, it appears that Coeur has added a significant amount of capitalized and expensed costs for exploration and development that Coeur contends relate to Gold Minerals that may be mined at some unspecified future date.

In addition, based on representations by Coeur and Maverix's preliminary analysis of Coeur's Recoupment Statements and other documents, it appears that Coeur has failed to reduce the costs it claims to have incurred before Commencement of Commercial

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG          10

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

Production to account for costs incurred for the benefit of resources that are not located on the Properties subject to the Royalty Deed, including the Jualin deposit. Maverix has requested, but has not yet received, detailed back-up documentation from Coeur for the costs claimed by Coeur as part of its Construction Investment that benefit resources outside the Properties subject to the Royalty Deed.

Exploration and development costs, which account for the vast majority of the approximately $158 million in additional costs claimed by Coeur in 2020 as part of its Construction Investment, were recoverable by Coeur under § 2(c) of the Royalty Deed, but only if incurred before the Commencement of Commercial Production. Coeur has admitted that Commercial Production commenced in July 2010, therefore, all such exploration and development costs incurred by Coeur after that date may not be included as part of its Construction Investment. Further, it appears that much of the additional exploration and development costs claimed by Coeur are capital costs. Capital costs were recoverable by Coeur under § 2(a) of the Royalty Deed, but only before Commencement of Commercial Production.

Further, the Royalty Deed requires that all costs included in Coeur's Construction Investment must be "determined in accordance with generally accepted accounting principles for metallic mining ventures with the United States applied on a consistent basis (hereinafter "GAAP")." Royalty Agreement § 2. In Coeur's financial statements that it prepared in accordance with GAAP, the additional exploration and development costs that

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG          11

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

Coeur seeks to include in its Construction Investment were either capitalized or expensed as period costs. As noted, Coeur's attempted recoupment of these costs as part of its Construction Investment violates § 2(a) and § 2(c) of the Royalty Agreement, which provide that capital and exploration and development costs may be included in the Construction Investment if incurred "prior to the Commencement of Commercial Production," but not after. It also violates § 2(b)(i) of the Royalty Agreement, which expressly excludes "depletion" of capital costs and capitalized exploration and development costs incurred after the Commencement of Commercial Production from Coeur's Construction Investment. Coeur's attempted inclusion of both capitalized and expensed post-Commercial Production exploration and development costs violates the requirement in § 2 of the Royalty Agreement that such costs be determined under GAAP because such costs were not incurred for the benefit of Gold Minerals produced from the Properties in the same period as the costs, and because Coeur treated these costs inconsistently. It also violates the requirement in § 2(b)(i) of the Royalty Agreement that any post-Commercial Production exploration costs must be incurred as operating costs for the benefit of Gold Minerals produced from the Properties.

Coeur also has failed to reduce from its Construction Investment capital, exploration and development costs related to resources that are not located on the Properties subject to the Royalty Deed, including the Jualin deposit. Although Coeur claims to have excluded costs incurred for the benefit of the Jualin deposit (and potentially other properties not

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

subject to the Royalty Deed) after the commencement of production from those properties, it still includes in its Construction Investment, and seeks to recoup, all costs of exploration, development, and all other pre-production costs related to those other properties. There is no support in the Royalty Agreement for Coeur's assertion that it only has to exclude post-production expenses for properties outside the Royalty Deed, but is free to include in its Construction Investment the entirety of its pre-production expenses that benefit properties outside the Royalty Deed. The Royalty Agreement provides, without qualification, that "If any of the costs otherwise includible in Coeur's Construction Investment are incurred partly for the benefit of any other properties or interests of Coeur, only the portion of such costs reasonably attributable to development and operation of the Properties in accordance with GAAP shall be included in Coeur's Construction Investment." Royalty Agreement § 2. Coeur's admitted failure to reduce its Construction Investment by the amount of pre-production expenses for the benefit of properties outside the Royalty Deed violates this provision.

Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

**INTERROGATORY NO. 7**

Describe in detail what costs included in the 2020 Q3 Recoupment Statement's calculation of Construction Investment are "costs disallowed by the Royalty Deed" as

**DAVIS GRAHAM & STUBBS LLP**
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

asserted in Paragraph 58 of the Complaint? Your answer should include, but not be limited to, the specific nature of the costs, the specific provisions of the Royalty Deed upon which you rely in making this assertion, and any other facts upon which you base this assertion.

**RESPONSE:**

Maverix objects to this Interrogatory because it seeks information that is not in Maverix's possession, custody, or control, but rather is maintained by Coeur. Maverix further objects to this Interrogatory because it seeks premature expert discovery. Maverix will disclose expert witnesses and expert opinions as required by the Federal Rules of Civil Procedure and the Court's Scheduling and Planning Order.

Subject to and without waiving these objections, see Response to Interrogatory No. 6, which Maverix incorporates in its entirety here. Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

**INTERROGATORY NO. 8**

Describe in detail what costs included in the 2020 Q3 Recoupment Statement's calculation of Construction Investment are "computed in violation of GAAP" as asserted in Paragraph 58 of the Complaint? Your answer should include, but not be limited to, the specific nature of the costs, the specific GAAP or other accounting rule that you claim applies and the basis for the claim that such rule applies, the specific provisions of the

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                14

Royalty Deed upon which you rely in making this assertion, and any other facts upon which you base this assertion.

**RESPONSE:**

Maverix objects to this Interrogatory because is seeks information that is not in Maverix's possession, custody, or control, but rather is maintained by Coeur. Maverix further objects to this Interrogatory because it seeks premature expert discovery. Maverix will disclose expert witnesses and expert opinions as required by the Federal Rules of Civil Procedure and the Court's Scheduling and Planning Order.

Subject to and without waiving these objections, see Response to Interrogatory No. 6, which Maverix incorporates in its entirety here. Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

**INTERROGATORY NO. 9**

Describe with specificity all facts supporting your assertion that any of Coeur's actions were taken so as "to avoid its obligations to Maverix as the holder of the royalty interest and Maverix's other rights under the Royalty Deed," as alleged in Paragraph 64 of the Complaint.

**RESPONSE:**

Maverix objects to this Interrogatory as overly broad and unduly burdensome as it requests "all facts" and because the information necessary to fully respond is in Coeur's

possession, custody, or control.

Subject to and without waiving these objections, Maverix states that in October of 2020, Maverix President Ryan McIntyre had a call with Alim Visram, Vice President of Corporate Development at Coeur. During that call, Mr. McIntyre advised that Recoupment could be achieved within three years. Shortly after that call, Coeur notified Maverix that it intended to make changes to its calculation of its Construction Investment. Coeur then provided a 2020 Q3 Recoupment Statement Recoupment Statement to Maverix that added approximately $158 million in costs to the Construction Investment amount that did not appear in the 2020 Q2 Recoupment Statement or in any previous Recoupment Statement. Coeur claimed to have incurred these additional expenses as exploration and development costs and mining taxes, some dating back to 2010. Even though Coeur had been generating quarterly Recoupment Statements since 2017 without these costs, Coeur's simply stated that the costs were permitted by Section 2(b)(i) of the Royalty Agreement but had been previously omitted from its calculation of its Construction Investment. When pressed for an explanation as to why Coeur had nearly doubled the amount remaining until Recoupment from what Coeur had represented to Maverix just a few months earlier, Coeur Vice President and Corporate Controller Ken Watkinson wrote that Coeur had "reviewed its treatment of this Royalty" because of the "change in ownership of the Royalty and recent increases in the price of gold." As a result of that "review," Coeur "determined that it had been applying an incorrect standard to the Royalty," but was "confident" that its

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                16

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

recalculation of the Construction Investment was correct.

Increasing the amount of the Construction Investment is advantageous to Coeur and detrimental to Maverix because it pushes out the date when Coeur must begin paying royalties to Maverix, potentially reduces the total amount of royalties Coeur must pay Maverix, and decreases the value of the royalty interest held by Maverix under the Royalty Deed.

The facts and circumstances surrounding Coeur's recalculation of its Construction Investment in the 2020 Q3 Recoupment Statement are more than sufficient to support the inference, and a jury's finding, that Coeur took these actions "to avoid its obligations to Maverix as the holder of the royalty interest and Maverix's other rights under the Royalty Deed."

Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

## INTERROGATORY NO. 10

Describe with specificity Maverix's understanding or belief as to the time frame within which the Net Returns Royalty would become payable, including but not limited to the time at which Maverix developed that belief and all facts and communications or representations upon which that belief or understanding is based.

## RESPONSE:

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                    17

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

Maverix objects to this Interrogatory because it seeks premature expert discovery. Maverix will disclose expert witnesses and expert opinions as required by the Federal Rules of Civil Procedure and the Court's Scheduling and Planning Order. Maverix further objects to this Interrogatory because answering it requires information that is not in Maverix's possession, custody, or control, but rather is maintained by Coeur.

Subject to and without waiving these objections, Maverix believes that, if the Construction Investment were calculated according to the terms of the Royalty Agreement it would start receiving Net Royalty Returns in the 2023–2025 timeframe, depending on a number of external factors including the price of gold. Maverix further states that this information is within Coeur's possession, custody, or control but Coeur has not produced to Maverix the information necessary to conduct a complete analysis of when Net Returns Royalty would become payable. Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

## INTERROGATORY NO. 11

Describe in detail all damages Maverix claims to have suffered.

## RESPONSE:

Maverix objects to this Interrogatory because it seeks premature expert discovery. Maverix will disclose expert witnesses and expert opinions as required by the Federal Rules of Civil Procedure and the Court's Scheduling and Planning Order. Maverix further objects

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                18

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
Main (303) 892-9400 Fax (303) 893-1379

to this Interrogatory because answering it requires information that is not in Maverix's possession, custody, or control, but rather is maintained by Coeur.

Subject to and without waiving these objections, Maverix states that Coeur's multiple breaches of the Royalty Agreement have damaged Maverix by pushing out the date when Maverix should begin receiving royalty payments, which may ultimately reduce the total royalty to which Maverix is entitled, and which has reduced the value of the royalty interest held by Maverix under the Royalty Deed. Maverix has requested a declaratory judgment against Coeur to limit the prospective damage that Coeur's conduct may cause. In the alternative, to the extent any of the disputed costs Coeur seeks to include in its Construction Investment are determined to be allowable under the Royalty Agreement, Maverix was damaged by Coeur's breaches of the Royalty Agreement and by relying to its detriment on the accuracy of Coeur's Recoupment Statements and related representations in deciding to purchase the Royalty Deed and with respect to its ongoing operations. Maverix relies on true, proper, and accurate reporting from all the assets it owns, including the Royalty Agreement, for the proper operation and functioning of its business. Discovery is ongoing, and Maverix reserves the right to supplement this response when further information regarding Coeur's recalculation of its Construction Investment is provided to Maverix.

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                    19

## INTERROGATORY NO. 12

To the extent your answer to any Request for Admission is anything other than an unqualified admission, state with specificity all facts supporting your response.

## RESPONSE:

Maverix objects to this Interrogatory because it is styled as a single interrogatory, but relates to at least seven separate requests for admission, and therefore counts as at least seven separate interrogatories. *See, e.g.*, *Safeco of America v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. 1998); *Jovanovich v. Redden Marine Supply, Inc.*, No. C10–924–RSM, 2011 WL 4459171, at *2 (W.D. Wash. 2011). Accordingly, Coeur improperly seeks discovery outside the scope of Rule 33 by exceeding the number of allowable interrogatories. Fed. R. Civ. P. 33(a) ("[A]ny party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts ...."); ECF No. 18, Scheduling and Planning Order § (II)(F)(1) ("The maximum number of interrogatories posed by each party shall not exceed 25."); *Nye v. Viking Spirit, Inc.*, No. 1:17-cv-00002-SLG, 2018 U.S. Dist. LEXIS 106805, at **6-8 (D. Alaska June 26, 2018) (discrete subparts count as separate interrogatories). Pursuant to Alaska Local Rule (Civil) 33.1(b), Maverix responds as follows:

- **RFA No. 1**: Request No. 1 is vague and ambiguous in its use of the term "rely." Maverix interpreted Request No. 1 as asking whether Maverix believed at the time it was deciding whether to purchase the Royalty Deed, that Coeur's Recoupment

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG          20

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

Statements are certified by Coeur's chief financial officer under the terms of the Royalty Agreement. At that time, Maverix understood that § 2(c) of the Royalty Agreement provides that Coeur's Recoupment Statements shall be "certified by Coeur's chief financial officer," and therefore denied Request No. 1.

- **RFA No. 3**: Request No. 3 is vague and ambiguous in its use of the term "object." As explained in the response to Request No. 3, the Royalty Agreement does not contain any "objection" process and imposes no deadline for Maverix to take issue with Coeur's breach, and for that reason Maverix denied Request No. 3.

- **RFA No. 4**: The Royalty Agreement requires Coeur to provide "detailed quarterly accounts by the 30th day following each calendar quarter, certified by Coeur's chief financial officer, showing the amounts and basis of credits toward Recoupment until Recoupment is achieved." Royalty Agreement § 2(c). The Royalty Agreement does not impose any additional requirement on Maverix to request Coeur's Recoupment Statements. For that reason, Maverix denied Request No. 4.

- **RFA No. 5**: Request No. 5 is vague and ambiguous in its use of the phrase "mining prospects in the area of the Kensington Mine" without specifying which mining prospects it requests Maverix to admit it was aware of. In response to Request No. 5, Maverix admitted that it was generally aware of other potential mining prospects in the vicinity of the Kensington Mine in December 2019 when it purchased the Royalty Deed. Maverix has no knowledge of Coeur's subjective intent in late 2019,

DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

and accordingly lacked sufficient information to admit or deny what Coeur may have "planned to develop" in late 2019.

- **RFA No. 6**: Request No. 6 asks Maverix to admit to its understanding in 2019 of what Coeur "planned" to do with certain infrastructure at the mine. Maverix has no information concerning Coeur's subjective intent in late 2019, and accordingly lacked sufficient information to admit or deny this request.

- **RFA No. 8**: Request No. 8 asks Maverix to admit to its understanding of what Echo Bay "believed" in 2019. Maverix has no knowledge of what Echo Bay subjectively believed in 2019, and accordingly lacked sufficient information to admit or deny this request. But Maverix admitted that Echo Bay informed Maverix that Coeur had failed to timely inform Echo Bay of Commencement of Commercial Production at the Kensington Mine.

- **RFA No. 9**: Maverix denied Request No. 9 because, to its knowledge, Coeur never notified the holder of the Royalty Deed of the Commencement of Commercial Production as required by the terms of the Royalty Deed. Maverix does not ratify, waive, or excuse any of Coeur's breaches of the Royalty Agreement and will disclose its damages as required by the Court's Scheduling and Planning Order.

*DAVIS GRAHAM & STUBBS LLP*
*1550 17th Street, Suite 500, Denver, CO 80202*
*Main (303) 892-9400 Fax (303) 893-1379*

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG                    22

**AS TO OBJECTIONS:**

DATED: July 13, 2022

By: _/s/ Jonathan W. Rauchway_

DAVIS GRAHAM & STUBBS LLP
    Jonathan W. Rauchway (*Admitted Pro Hac Vice*)
    Shannon Wells Stevenson
    (*Admitted Pro Hac Vice*)
    Kristin L. Arthur (*Admitted Pro Hac Vice*)

STOEL RIVES LLP
    James E. Torgerson (Bar No. 8509120)

*Attorneys for Plaintiffs Maverix Metals Inc.*
*and Maverix Metals (Nevada) Inc.*

**DAVIS GRAHAM & STUBBS LLP**
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG      23

## <u>VERIFICATION</u>

I, Matt Fargey, declare that I am Chief Financial Officer of Maverix Metals Inc. and a Director and Treasurer of Maverix Metals (Nevada) Inc., and in that capacity I am authorized to make this Verification on behalf of Plaintiffs Maverix Metals Inc. and Maverix Metals (Nevada) Inc.

I have read the foregoing Plaintiffs' Responses and Objections to Coeur Alaska, Inc.'s First Set of Interrogatories, which have been prepared with the assistance of employees on the advice and assistance of counsel, and are based upon information, obtained from records still in existence, presently recollected, or thus far discovered in the course of preparation of said Responses. Subject to inadvertent or undiscovered errors or omissions and to the limitations set forth therein, said Responses are true and correct to the best of my present knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

_MFargey_
_____
Matt Fargey

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2022, I electronically mailed the foregoing **PLAINTIFFS' RESPONSES AND OBJECTIONS TO COEUR ALASKA, INC.'S FIRST SET OF INTERROGATORIES** to the following email addresses of counsel of record:

Michael A. Grisham
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
P: 907.257.7829
F: 907.276.4152
C: 907.301.2246
grisham.michael@dorsey.com


*/s/ Jonathan W. Rauchway*
Jonathan W. Rauchway

**DAVIS GRAHAM & STUBBS LLP**
1550 17th Street, Suite 500, Denver, CO 80202
*Main (303) 892-9400 Fax (303) 893-1379*

*Maverix Metals Inc., et al. v. Coeur Alaska, Inc.*
Case No. 1:21-cv-00021-SLG