# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

MAVERIX METALS INC., a
Canadian corporation, *et al.*,

          Plaintiffs,

          v.

COEUR ALASKA, INC., a Delaware
corporation,

          Defendant.

---

COEUR ALASKA, INC., a Delaware
corporation,

          Counter Claimant,

          v.

MAVERIX METALS (NEVADA) INC.,
a Nevada corporation, *et al.*,

          Counter
          Defendants.

Case No. 1:21-cv-00021-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT AND MOTION FOR CLARIFICATION

Before the Court at Docket 43 is Defendant and Counter Claimant Coeur

Alaska, Inc.'s ("Coeur") *Motion for Summary Judgment.* Plaintiffs and Counter

Defendants Maverix Metals Inc.'s ("Maverix") responded in opposition at Docket

54, to which Coeur replied at Docket 62. Also before the Court is Coeur's *Motion

for Clarification* at Docket 90, to which Maverix responded in opposition at Docket

91, and Coeur replied at Docket 92. Oral argument was not requested with respect to either of Coeur's motions and was not necessary to the Court's determination.

## BACKGROUND

Coeur owns and operates the Kensington mine, a gold mine located near Juneau, that consists of two contiguous mineral claim groups: the Kensington group and the Jualin group.[1] On July 7, 1995, Coeur entered into a Royalty Deed with Echo Bay Exploration Inc. ("Echo Bay"), a subsidiary of Kinross Gold Corporation ("Kinross"), which accorded Echo Bay a royalty interest in the Kensington group claims, but not the Jualin group claims.[2] Maverix purchased the Royalty Deed from Echo Bay in 2019 for $4 million dollars.[3] The motion for summary judgment that is now before the Court principally concerns the proper interpretation of the Royalty Deed.

Under the deed's terms, royalty payments do not begin until Coeur has recovered $32,500,000 plus "Coeur's Construction Investment," two amounts that are collectively referred to as "Recoupment." The Royalty Deed provides that Coeur's Construction Investment will be calculated in accordance with "generally

---

[1] Docket 44-2 at 3.

[2] Docket 1-2 at 1; Docket 51-5 at 6.

[3] Docket 1 at 9, ¶ 38; Docket 51-5 at 27.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 2 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 2 of 29

accepted accounting principles for metallic mining ventures within the United States" ("GAAP").[4]

The Royalty Deed anticipated that Coeur might incur expenses that would benefit the Kensington group claims in addition to other claims owned by Coeur. For example, Coeur might incur costs to build infrastructure used to process gold mined from both the Kensington group claims and the Jualin group claims. To address this situation, the Royalty Deed includes a "Commingling Provision," which provides that: "[i]f any of the costs otherwise includible in Coeur's Construction Investment are incurred partly for the benefit of any other properties or interests of Coeur, only the portion of such costs reasonably attributable to development and operation of the Properties in accordance with GAAP shall be included in Coeur's Construction Investment."[5]

The Royalty Deed also sets out two timeframes that are critical to determining which expenditures can be properly calculated toward Coeur's Construction Investment: those expenditures incurred before the Commencement of Commercial Production and those expenditures incurred after the Commencement of Commercial Production, but before Coeur achieves

---

[4] Docket 1-2 at 2.

[5] Docket 1-2 at 4.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 3 of 29

Recoupment.[6]  Coeur began the Commencement of Commercial Production for purposes of the Royalty Deed in 2010.[7]

For the expenses Coeur incurred prior to the Commencement of Commercial Production, Sections 2(a) and 2(c) of the Royalty Deed explain which expenses are to be included as part of Coeur's Construction Investment.  More specifically, Section 2(a) defines "Direct capital costs for the construction of a mine and processing facility on the Properties," and Section 2(c) defines "Exploration and Development Costs."[8]  Section 2(b) explains which "operating costs" that have been and will be incurred after the Commencement of Commercial Production and prior to Recoupment are to be included in Coeur's Construction Investment calculation.[9]

According to the Royalty Deed, beginning with the third quarter of 1995, Coeur was required to provide the royalty holder with quarterly reports detailing "all costs included in the accrual of Coeur's Construction Investment during that quarter."[10]  However, for many years, Coeur did not provide the requisite reports; nor did Echo Bay inquire about or request these reports until the Vice President of Kinross emailed Coeur in July 2017 and stated that "[t]o the best of my knowledge,

---

[6] *See generally* Docket 1-2 at 2–6.

[7] Docket 55-4 at 6.

[8] Docket 1-2 at 2–4.

[9] Docket 1-2 at 3–4.

[10] Docket 1-2 at 5.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 4 of 29

Echo Bay and Kinross have never received notices or reports from Coeur as required under the Royalty Deed."[11]  On August 31, 2017, Coeur sent a "summary for the CAK/Kinross (Echo Bay) Royalty Deed as of end of Q217"; thereafter, the parties sent several emails back and forth regarding Coeur's calculation of Recoupment.[12]

By the time Maverix was considering whether to purchase the Royalty Deed in August 2019, Coeur "had provided multiple Recoupment statements to Kinross, which in turn, provided those statements to Maverix."[13]  Maverix contends that it conducted its due diligence on the Royalty Deed before purchasing the deed by reviewing these Recoupment Statements as well as technical reports.[14]  According to Maverix's Chief Financial Officer and Treasurer, "[p]rior to Maverix's purchase of the Royalty Deed, Maverix was aware that Kinross questioned some of the costs Coeur had included in the Base Recoupment Value, and Maverix understood those costs might be the subject of a later dispute with Coeur."[15]

Indeed, the purchase contract between Kinross and Maverix excepted the Kensington Royalty from the warranty provision of the deal, providing that "nor, to the Knowledge of the Seller, are there any issues that could lead to a default under

---

[11] Docket 44-8 at 6–7.

[12] Docket 44-8 at 2–4.

[13] Docket 56 at 2, ¶ 6.

[14] Docket 54 at 6 (citing Docket 56 at 3, ¶ 8).

[15] Docket 56 at 3, ¶ 9.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 5 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 5 of 29

any Royalty Instrument, except with respect to the Kensington Royalty."[16] Further, Maverix agreed to "use commercially reasonable efforts to effectuate recovery of the Kensington Dispute Proceeds" and to "ensure that any amounts paid to [Maverix] in respect of the Kensington Dispute Proceeds are paid forthwith to [Kinross] upon receipt thereof," demonstrating that both actors believed that there was a "dispute" about the Kensington proceeds when they completed their transaction on December 1, 2019.[17]

According to Coeur, in preparation for this sale of the Royalty Deed, Kinross took a "renewed interest" in Kensington and asked Coeur "for additional information and follow up."[18] Coeur's Controller and Chief Accounting Officer, Ken Watkinson, averred that in the summer of 2019, he was prompted to read through the Royalty Deed in response to these requests from Kinross.[19] Mr. Watkinson explained that as part of his review, he noticed that "there was a large divergence at Kensington between [their] free cash flow model and the royalty payout" and that "it was the exclusion of [post-production] exploration and development costs that was driving [this divergence]."[20] He came up with a theory, which will be referred to hereinafter as the "Added Costs" theory, that would allow Coeur to

---

[16] Docket 44-18 at 17.

[17] Docket 44-18 at 2, 29.

[18] Docket 43 at 9.

[19] Docket 44-3 at 5-6.

[20] Docket 44-3 at 6.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 6 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 6 of 29

recoup these post-production exploration and development costs. This Added Costs theory turns on Coeur's interpretation of Section 2(b)(i) of the Royalty Deed, which provides that Coeur can recoup certain "operating costs" incurred after the Commencement of Commercial Production and before Recoupment begins.[21] According to Mr. Watkinson, Section 2(b)(i) "allowed for exploration and development drilling costs" to be recouped post-production, but Coeur "had not included any of that in [its] calculations [of Recoupment] to date."[22]

Mr. Watkinson averred that he discussed this Added Costs theory internally with Coeur's legal team and its CEO, Mr. Whelan.[23] Mr. Watkinson also explained that Coeur took some time to explore whether the terms of the Royalty Agreement allowed them to include these post-production costs.[24] As a result, on August 4, 2020, Coeur provided Maverix with a Recoupment Statement for the second quarter of 2020 that did not include the Added Costs, and concluded that Coeur was $188,971,481 away from reaching Recoupment.[25] But on November 13, 2020, the Recoupment Statement for the third quarter of 2020 included the Added Costs, increasing the calculation of Coeur's Construction Investment, and

---

[21] Docket 1-2 at 3.

[22] Docket 44-3 at 5–6.

[23] Docket 44-3 at 7.

[24] Docket 44-3 at 8–9.

[25] Docket 55-10 at 3.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 7 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 7 of 29

concluding that Coeur was now $330,698,923 away from reaching Recoupment, approximately $140 million more than the preceding statement.[26]

Maverix explains this dramatic change in the Recoupment calculation less innocently. According to Maverix, in the summer of 2020, the President of Maverix, Ryan McIntyre, informed Coeur Vice President, Alim Visram, that current gold prices would cause the royalty to begin to pay out in the next two to four years and Mr. Visram "appeared surprised" by this information.[27] Maverix contends that it was this realization that prompted Coeur to change its Recoupment calculations to include the Added Costs.[28]

After Coeur sent Maverix the Recoupment statement for the third quarter of 2020, the parties sent several emails back and forth regarding their differing interpretations of the Royalty Deed with respect to the Added Costs.[29] Maverix also informed Coeur that it believed that Coeur was not properly applying the Commingling Provision because "[t]here [wa]s no reduction to [Coeur's Construction Investment] balance for the costs incurred prior to Gold Minerals produced from the Jualin deposit, including initial construction costs of infrastructure which is being utilized for the benefit of mining and processing ore

---

[26] Docket 55-12 at 2.

[27] Docket 54 at 8.

[28] Docket 54 at 31–32.

[29] *See generally* Docket 55-13.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 8 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 8 of 29

from the Jualin deposit."[30]  At that time, Maverix did not assert that only infrastructure costs for facilities located on the Kensington claims were recoverable.[31]

When the parties failed to resolve their dispute, Maverix filed this lawsuit on December 2, 2021, alleging (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) negligent misrepresentation, pleaded in the alternative.[32]  On January 17, 2023, Maverix filed a motion for partial summary judgment at Docket 41 that introduced its new theory of damages.  On January 18, 2023, Coeur filed the motion for summary judgment that is now before the Court seeking judgment in its favor with respect to all of Maverix's original claims.  Although Coeur's motion for summary judgment was filed after Maverix had introduced its new theory of damages, neither party has addressed how the new theory impacts Coeur's motion for summary judgment.  At Docket 89, the Court denied Maverix's motion for summary judgment without prejudice and granted in part and denied in part Coeur's alternative request for continuance of discovery to allow supplemental discovery with respect to Maverix's new theory. Also before the Court is Coeur's motion for clarification with respect to the Court's Order at Docket 89 directing the parties to conduct supplemental discovery.

---

[30] Docket 55-13 at 8.

[31] *See generally* Docket 89.  Indeed, Maverix did not make that assertion until early 2023.

[32] Docket 1 at 11-14, ¶¶ 52-72.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 9 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 9 of 29

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Maverix and Coeur have diverse citizenship and the amount in controversy exceeds $75,000.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[33]

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."[34] However, "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's

---

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[34] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 10 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 10 of 29

case.'"[35]  If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[36]  The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[37]

The basis for the Court's jurisdiction in this case is diversity under 28 U.S.C. § 1332.  A federal court sitting in diversity jurisdiction generally applies the substantive law of the forum state and federal procedural law.[38]  Accordingly, federal law provides the summary judgment standard and Alaska law guides the interpretation of the Royalty Deed.

## DISCUSSION

### I.    Bad Faith Claim

Maverix alleges in its complaint that Coeur breached the implied covenant of good faith and fair dealing by taking action "to avoid its obligations to Maverix as the holder of the royalty interest and Maverix's other rights under the Royalty Deed" in a manner that "directly and proximately caused damages to Maverix."[39]

---

[35] *Id.* (quoting *Celotex Corp.*, 477 U.S. at 325).

[36] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)).

[37] *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[38] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[39] Docket 1 at 12–13, ¶¶ 60–66.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 11 of 29

In Coeur's motion for summary judgment that is now before the Court, Coeur contends that this claim "must be dismissed because there is no evidence to support it."[40]

Under Alaska law, "[t]he covenant of good faith and fair dealing is implied in every contract in order to effectuate the reasonable expectations of the parties to the agreement."[41] The covenant has both a subjective and objective element. "The subjective aspect prohibits one party from acting to deprive the other of the benefit of the contract."[42] "The objective element requires each party to act 'in a manner that a reasonable person would regard as fair.'"[43]

There is no basis for a finding of bad faith if "the record is devoid of any indication that [the actor's] purpose . . . was anything but [a] reasonable business purpose."[44] Indeed, in *Klondike Industries Corp. v. Gibson*, the trial court found following a bench trial that seven circumstances established that an employer had breached the covenant, but the Alaska Supreme Court reversed, concluding that there was no evidence that the employer acted in bad faith; to the contrary, the employer's conduct was "either relatively neutral or was designed to produce a

---

[40] Docket 43 at 14.

[41] *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997) (citing *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983)).

[42] *McConnell v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 991 P.2d 178, 184 (Alaska 1999) (citing *Chijide v. Maniilaq Ass'n*, 972 P.2d 167, 172 (Alaska 1999)).

[43] *Id*. (quoting *Chijide*, 972 P.2d at 172).

[44] *Klondike Indus. Corp. v. Gibson*, 741 P.2d 1161, 1169 (Alaska 1987).

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 12 of 29

profitable sale."[45]  And in *Ellingstad v. State, Department of Natural Resources*, the Alaska Supreme Court affirmed the grant of summary judgment for the defendant on an implied covenant of good faith and fair dealing claim because there was "no evidence in the record of the [defendant] engaging in the 'subterfuges and evasions that violate the obligation of good faith performance.'"[46]

At issue in *Ellingstad* was a contract between Ellingstad and the Alaska Department of Natural Resources ("DNR") for the purchase of State of Alaska land following a 20-year payment period.  The contract did not limit DNR's right to assign its interest and as part of a settlement agreement between DNR and the University of Alaska, the "University assumed all obligations and rights of the State under Ellingstad's contracts."[47]  Ellingstad later sued DNR, alleging in relevant part that DNR "breached the covenant of good faith and fair dealing by failing to disclose the proposed transfer of lands to the University and the potential effects of that transfer on her title."[48]  The Alaska Supreme Court concluded that there was no evidence of a breach of the covenant because DNR had provided "ample notice" of the proposed settlement and an opportunity for affected landowners to comment

---

[45] *Id*. at 1170.

[46] 979 P.2d 1000, 1009 (1999) (alterations omitted) (quoting *Klondike Indus. Corp.*, 741 P.2d at 1168).

[47] *Id*. at 1003.

[48] *Id*. at 1009.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 13 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 13 of 29

on the proposed transfer.[49]

According to Maverix, Coeur violated the covenant of good faith and fair dealing because Coeur changed the Recoupment calculation to avoid paying royalties to Maverix. Maverix contends that "[o]nce Coeur realized that the Royalty Deed was about to start paying out, Coeur changed its interpretation of the Royalty Deed, so as to push Recoupment back and 'injure the rights of [Maverix] to receive the benefits of the agreement.'"[50] Maverix also maintains that "[p]rior to changing its calculation, Coeur had a negative cash flow and a net loss from its operations," and "[i]t was not until Coeur ran out of options to raise cash that it changed its calculation of the Construction Investment."[51]

As a preliminary matter, Maverix's theory that Coeur changed the Recoupment calculation to increase Coeur's immediate cash flow is untenable because revising the royalty statement could not have an immediate effect on Coeur's cash flow.[52] According to Coeur's final Recoupment calculation before including the Added Costs, Coeur estimated that "the royalty would begin to pay out in the next 2-3 years."[53] Coeur's revised Recoupment calculation delayed the

---

[49] *Id*.

[50] Docket 54 at 31.

[51] Docket 54 at 32.

[52] Docket 62 at 3.

[53] Docket 62 at 3 (first citing Docket 55-10; and then citing Docket 53-1 at 1).

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 14 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 14 of 29

royalty payout even further.[54]  In either case, however, the Recoupment calculation would not impact Coeur's cash flow for a number of years.

Moreover, as in *Klondike Industries Corp.* and *Ellingstad*, there is no evidence in the record to support a finding that Coeur acted with the intent to deprive Maverix of the benefits of the Royalty Deed.  To the contrary, Coeur employee Ken Watkinson averred that he had first identified an alleged issue with the Recoupment calculation in 2019, when he was prompted to look more closely at the Royalty Deed in response to "Kinross' renewed attention to it."[55]  When reviewing the Royalty Deed at that time, Mr. Watkinson noticed "a large divergence at Kensington between our free cash flow model and the royalty payout."[56]  It was not until the summer of 2020 that Maverix informed Coeur that Maverix "thought the Kensington royalty would start paying in two to four years, depending on the price of gold."[57]  Accordingly, Maverix's contention that it was Coeur's realization that the Kensington royalty would start to pay out that prompted Coeur to change the Recoupment calculation is contradicted by the record.[58]

---

[54] Docket 55-12 at 1–2.

[55] Docket 43 at 16; Docket 44-3 at 6.

[56] Docket 44-3 at 6.

[57] Docket 55-8 at 9.

[58] Maverix's opposition does not cite to any evidence to the contrary.  *See* Docket 54 at 32 (first citing Docket 55-8 at 6, 8 (Coeur employee responded affirmatively when asked if "2020 was one of the biggest years for the increase in gold price in decades" and if "Coeur was considering selling the Kensington mine" in late 2019 and early 2020); then citing Docket 55-18 at 3, 7 (Coeur employee responded affirmatively in a deposition when asked if "Coeur was trying to raise operating capital in the first quarter of 2020"; that "the company had a negative cash flow

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 15 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 15 of 29

The record is also "devoid of any indication that [Coeur's] purpose" in changing the Recoupment calculation "was anything but [a] reasonable business purpose."[59]  For example, on August 3, 2020, Mr. Watkinson emailed Coeur Vice President Alim Visram to inform him that "[t]he [Recoupment] calculation as performed does not include a credit for to [sic] the exploration spending however the agreement allows for it."[60]  He explained: "I am not sure why my predecessors did not include it but when I was working on the initial investment audit that Kinross did last year I determined that we could be taking this deduction."[61]  Mr. Visram responded "[g]ood catch on exploration, sounds like we should definitely include it if the agreement allows."[62]  Maverix does not point to any contrary evidence that Coeur engaged in any "subterfuge or evasion" that violated the obligation of good faith performance.[63]

For these reasons, the Court concludes that there is no genuine dispute as to any material fact and Coeur is entitled to judgment as a matter of law with respect to Maverix's bad faith claim.

---

at the time"; and that Coeur considered "restructur[ing] Maverix's royalty"); and then citing Docket 55-13 (email correspondence between Coeur and Maverix regarding their opposing interpretations of the Royalty Deed)).

[59] *Klondike Indus. Corp.*, 741 P.2d at 1168–9.

[60] Docket 44-19 at 2.

[61] Docket 44-19 at 2.

[62] Docket 44-19 at 2.

[63] *See Ellingstad*, 979 P.2d at 1009.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 16 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 16 of 29

## II.    Misrepresentation Claim

Maverix alleges in the alternative in its complaint that Coeur provided false information regarding the Recoupment balance without exercising reasonable care or competence and "Maverix justifiably relied on the information provided by Coeur before December 2019 in deciding to purchase Echo Bay's royalty interest," causing Maverix to suffer damages.[64]

In September 2022, Maverix's expert concluded that these damages should be assessed at $4 million, the amount Maverix paid to acquire the Royalty Deed.[65] The expert opined then that "[u]nder Coeur's modified disclosures and calculation of CCI and Recoupment, which were not disclosed to Maverix prior to its purchase of the Royalty Interest . . . Maverix's Royalty Interest in Kensington had no value," because "[d]ue to the amount of capital to be recovered, no royalty payments [were] anticipated to be triggered within the [life of the mine]."[66]

In January 2023, however, Maverix introduced its new theory of damages that is at odds with the misrepresentation claim as it was originally pled. Pursuant to the new theory, Maverix now alleges that all of the costs that Coeur incurred to construct infrastructure that was not built "on the Properties" should be excluded

---

[64] Docket 1 at 13–14, ¶¶ 67–72.

[65] Docket 72-1 at 29.

[66] Docket 72-1 at 29.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 17 of 29

from Coeur's Construction Investment calculation.[67]  In March 2023, Maverix's expert opined that, after excluding the costs incurred off the Properties, Maverix's Royalty Interest entered pay status during Q4 2020 and Maverix is due unpaid royalties through December 31, 2022, of $8,512,295 if Added Costs are included in the Recoupment calculation and $24,435,722 if Added Costs are removed from the Recoupment calculation.[68]

It is not clear to the Court how Maverix can continue to assert its misrepresentation claim based on the Royalty Deed being worthless while now seeking millions in Royalty Deed payments.  Regardless, Maverix has not met its burden to survive Coeur's motion for summary judgment.  Pursuant to Alaska law, there are four elements of the tort of negligent misrepresentation: (1) "the party accused of the misrepresentation must have made the statement 'in the course of his business, profession or employment'"; (2) "the representation must supply 'false information'"; (3) "there must be 'justifiable reliance' on the false information"; and (4) "the accused party must have failed 'to exercise reasonable care or competence in obtaining or communicating the information.'"[69]

Addressing the third element first, as a general rule, a person cannot

---

[67] Docket 41.

[68] Docket 72-5 at 7–8.

[69] *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 (Alaska 1984) (quoting Restatement (Second) of Torts § 552).

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 18 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 18 of 29

justifiably rely on a statement that the person knows to be false.[70]  The record evidence shows that Kinross informed Maverix during Maverix's due diligence that Kinross believed that Coeur's Recoupment statements were inaccurate.  For example, Maverix's Chief Financial Officer and Treasurer, Matthew Fargey, averred that during the due diligence process, Maverix was "aware that Kinross had questioned certain things in the recoupment statements," and more specifically that Kinross was "objecting or had some concern about the actual costs themselves."[71]  And Maverix President, Ryan McIntyre, averred that prior to the closing of the sale, "Kinross thought that there was some miscounting in the initial capital expenditures related to Kensington."[72]  Similarly, Controller for Maverix, Peter Winters, averred that he was "aware of Kinross's specific concerns related to the base recoupment."[73]

Moreover, the purchase contract between Maverix and Kinross demonstrates Maverix's knowledge that the Recoupment calculations were potentially inaccurate.  For example, Kinross excepted the Kensington Royalty from the warranty provisions of the deal.[74]  Further, Maverix and Kinross agreed

---

[70] *See, e.g.*, *Recreational Data Servs., Inc. v. Trimble Navigation Ltd.*, 404 P.3d 120, 126 (Alaska 2017) ("A plaintiff who knows that a statement is false 'cannot justifiably rely' on it." (citation omitted)); *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010).

[71] Docket 44-17 at 7, 9; Docket 56 at 2, ¶ 2.

[72] Docket 44-16 at 6; Docket 55-7 at 2.

[73] Docket 44-24 at 3.

[74] Docket 44-18 at 17 ("[N]or, to the Knowledge of Seller, are there any issues that could lead to

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 19 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 19 of 29

to "cooperate and consult with the other" to "effectuate recovery of the Kensington Dispute Proceeds," demonstrating that both parties believed that there was a "dispute" about the Kensington proceeds.[75]    Maverix also agreed to "use commercially reasonable efforts to effectuate recovery of the Kensington Dispute Proceeds" and to "ensure that any amounts paid to [Maverix] in respect of the Kensington Dispute Proceeds are paid forthwith to [Kinross] upon receipt thereof."[76]    The fact that Maverix agreed to dispute the accuracy of the proceeds from Kensington in the purchase contract further demonstrates that Maverix believed the Recoupment calculations to be inaccurate.

Maverix nonetheless contends that it relied on the Recoupment statements because "[o]ne critical factor in [the modeling of the royalty] was the amount of Construction Investment that Coeur had to recoup until the royalty began to pay," and "Maverix relied on those numbers in order to decide whether to purchase the royalty and how much it was worth."[77]    Maverix does not cite to any record evidence, however, supporting these contentions.    In sum, because Maverix believed that Coeur's Recoupment calculations were inaccurate, Maverix could not have justifiably relied upon them; therefore, Coeur is entitled to summary judgment

---

a default under any Royalty Instrument, except with respect to the Kensington Royalty.").

[75] Docket 44-18 at 29.

[76] Docket 44-18 at 29.

[77] Docket 54 at 35.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 20 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 20 of 29

on Maverix's negligent misrepresentation claim.

### III.   Contract Interpretation Issues

The interpretation of the Royalty Deed is at the heart of the dispute between the parties in this case.  Under Alaska law, "[t]he objective of contract interpretation is to determine and enforce the reasonable expectations of the parties."[78]   To determine the intent of the parties, courts look to the "language used in the contract, case law interpreting similar language, and relevant extrinsic evidence, including the subsequent conduct of the parties."[79]   As a general rule, contract interpretation is ordinarily a question of law, but "it becomes a task for the trier of fact when the parties present extrinsic evidence to clarify a contract's meaning" and "this evidence points toward conflicting interpretations of the contract, and when the contract itself is reasonably susceptible to either meaning."[80]

In its motion before the Court, Coeur moves for partial summary judgment with respect to two contract claims.  The first is whether Coeur may recoup the exploration and development costs incurred after the commencement of commercial production at Kensington under the terms of the Royalty Deed.[81] Section 2(b) provides that Coeur can recoup certain "operating costs" incurred

---

[78] *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004).

[79] *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996) (citations omitted).

[80] *Little Susitna Const. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 23 (Alaska 1997) (citations omitted).

[81] Docket 43 at 23.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 21 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 21 of 29

"after the Commencement of Commercial Production and prior to Recoupment," including "Mining Costs," defined as those costs incurred "in exploring for . . . Gold Minerals produced from the Properties," including "exploration drilling."[82]

Coeur contends that it is "expressly authorized to include post-production exploration costs in its Construction Investment, and to do so it is simply required to demonstrate that the Exploration Costs are 'incurred' and can be tied to Gold Minerals produced at a future date."[83] In response, Maverix relies on its expert Karen M. Engstrom to define the term "operating costs" for purposes of GAAP. She opines that "capitalized costs" should be excluded from the calculation of operating costs because "by definition, capitalized costs are fundamentally different from and are not operating costs." Ms. Engstrom also maintains that "expensed exploration costs" should be excluded because they are "unrelated to 'Gold Minerals produced' from the mine and instead relate to uncertain future minerals."[84]

By contrast, Coeur's expert Brent Papek avers that operating costs include capitalized costs under the terms of the Royalty Deed because the capitalized costs "bec[a]me operating costs through subsequent depreciation or

---

[82] Docket 1-2 at 3.

[83] Docket 43 at 27.

[84] Docket 54 at 20 (quoting Docket 58-1 at 14, 18).

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 22 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 22 of 29

amortization."[85]  In a deposition, Mr. Papek responded affirmatively when asked if it is "fair to say that there's a disagreement between you and Ms. Engstrom on how [the principle of accounting that capitalized costs are, by definition, non-operating costs] should be applied to properly interpret the royalty agreement."[86]

The second contract interpretation issue concerns the proper exclusion of commingled costs from the Base Recoupment Value.[87]  Section 2(c) of the Royalty Deed provides:

> If any of the costs otherwise includible in Coeur's Construction Investment are incurred partly for the benefit of any other properties or interests of Coeur, only the portion of such costs reasonably attributable to development and operation of the Properties in accordance with GAAP shall be included in Coeur's Construction Investment.[88]

The parties agree that Coeur incurred costs prior to the Commencement of Commercial Production partly for the benefit of the Jualin Mine, but they disagree as to the date after which Coeur must exclude these Jualin-related costs.

According to Coeur, the Jualin resource "was specifically identified as proven/probable in 2016," so only those Jualin-related costs incurred in or after 2016 should be excluded from the Base Recoupment Value.[89]  Maverix responds

---

[85] Docket 55-15 at 6–7.

[86] Docket 55-15 at 7–8.

[87] Docket 43 at 31.

[88] Docket 1-2 at 4.

[89] Docket 43 at 33.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 23 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 23 of 29

that Coeur must also apportion Jualin-related costs incurred before 2016 because "the evidence shows that Coeur incurred significant costs for the benefit of the Jualin Mine before 2016."[90] Maverix also maintains that "the Deed does not limit Coeur's apportionment obligation to a specific timeframe or link it to the identification of another resource or to commercial production."[91]

While these two contractual interpretation issues differ in their specifics, one aspect of each of these issues that is important for purposes of summary judgment is the same: both parties rely on conflicting expert testimony to contend that the GAAP supports their Recoupment calculation. "As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case."[92] Here, Ms. Engstrom's reports support both of Maverix's contract interpretation claims for purposes of surviving a motion for summary judgment.[93] This dispute between expert reports renders summary judgment on this issue inappropriate at this time.[94]

---

[90] Docket 54 at 26.

[91] Docket 54 at 28.

[92] *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996) (citation omitted).

[93] *See generally* Docket 58-1 at 17–21; Docket 58-2 at 5–6 (opining as to how Coeur's Added Costs theory contradicts the terms of the Royalty Deed) Docket 72-5 (opining on Maverix's new damages theory for Jualin-related expenses).

[94] *See, e.g.*, *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016) ("If Jones said one thing and Secour said another on the same subject, it is the role of the jury, not a court on summary judgment, to determine the facts.").

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 24 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 24 of 29

Moreover, following the completion of briefing on this motion, the Court granted Coeur's request for a continuance of discovery pursuant to Rule 56(d) at Docket 89.  Pursuant to the Court's order, the parties may conduct supplemental discovery with respect to the drafting parties' intent and understanding of the relevant provisions of the Royalty Deed, particularly with respect to the phrase "on the Properties," their intended allocation of risk, and their knowledge at the time when they signed the Royalty Deed.  During this process, the parties may discover extrinsic evidence that is relevant to these contract interpretation disputes.  For this reason, the Court will deny Coeur's motion for summary judgment with respect to the contract interpretation issues without prejudice.

In addition, in *United States v. Holguin*, the Ninth Circuit held that in a case such as this one where the parties' arguments at trial will heavily depend on expert testimony, before the expert testifies to the jury, the district court must evaluate that expert's reliability.[95]  The district court must make "explicit" findings with respect to the expert's reliability if that reliability is challenged.[96]  "The district court's gatekeeping can be performed through numerous procedures—such as

---

[95] 51 F.4th 841, 853 (9th Cir. 2022) ("A district court 'abdicates its gatekeeping role, and necessarily abuses its discretion, when it makes no reliability findings.'" (citations omitted)), *cert. denied*, No. 22-7335, 2023 WL 3571601 (U.S. May 22, 2023), and *cert. denied sub nom. Higuera v. United States*, No. 22-7350, 2023 WL 3571611 (U.S. May 22, 2023).

[96] *Id*. at 853, 855 ("Reliability findings must be made 'explicit' on the record—an 'implicit' finding does not suffice. . . . Because appellants challenged the reliability of the government's expert testimony, and the district court did not make explicit reliability findings, the district court abused its discretion." (citations omitted)).

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 25 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 25 of 29

motion in limine briefing and oral argument, voir dire, and cross-examination at trial."[97]  However, the Ninth Circuit cautioned that "even if not required, it will often be beneficial for district courts to conduct some proceeding, focused on the reliability of expert testimony."[98]  The Court expects to address this topic at the status hearing on August 30, 2023.

### IV. Motion for Clarification

Coeur filed a motion for clarification at Docket 90 with respect to the Court's order at Docket 89 seeking clarification as to the scope of discovery.  The Court previously allowed Coeur to conduct supplemental discovery with respect to "the drafting parties' intent and understanding of the relevant provisions of the Royalty Deed, particularly with respect to the phrase 'on the Properties,' their intended allocation of risk, and their knowledge at the time when they signed the Royalty Deed."[99]  The Court denied Coeur's requests for supplemental discovery with respect to "the knowledge Echo Bay, Kinross, and Maverix each had of facility locations prior to the filing of this lawsuit" and "information regarding facility site selection, permitting, and construction."[100]

---

[97] *Id*. at 852 (citations omitted).

[98] *Id*. at 853 (citation omitted).

[99] Docket 89 at 14.

[100] Docket 89 at 14–15.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 26 of 29

Coeur now seeks clarification as to whether it may engage an expert witness to present its impossibility and impracticability defense.[101]  "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend."[102]  Motions for clarification are appropriate when parties "are uncertain about the scope of a ruling" or when the ruling is "reasonably susceptible to differing interpretations."[103]  In the Court's order at Docket 89, the Court did not address expert witnesses, so the motion for clarification is appropriate.

Coeur seeks to present expert testimony with respect to Coeur's impossibility and impracticability defenses, asserting that "because it was impossible or commercially impracticable for Coeur to construct the mine's necessary facilities solely on the Kensington properties, Coeur should not lose the benefit of recouping those costs as promised in the Royalty Deed."[104]  Coeur maintains that expert testimony is relevant to these defenses because they will "likely involve technical information about construction and site suitability."[105]

---

[101] Docket 90 at 2.

[102] *United States v. All Assets Held at Bank Julius, Baer & Co.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018) (citation omitted).

[103] *Id.* at 99–100 (citations omitted).

[104] Docket 92 at 2.

[105] Docket 92 at 2.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 27 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 27 of 29

Maverix responds that the Court "rejected Coeur's request for expert discovery concerning whether it was possible to build mine infrastructure on the Kensington property."[106] But the Court's order did not consider expert testimony. Instead, the Court concluded that discovery of the knowledge Maverix and its predecessors had of the facility locations is not relevant to a waiver defense because Coeur had not identified a contractual right that could form the basis of such a defense.[107] The Court's order also found that Coeur had not shown that Maverix or its predecessors or other third parties had any relevant information with respect to information regarding facility site selection, permitting, and construction.[108] The Court now concludes that expert testimony with respect to technical information about construction and site suitability, and particularly as known by the contracting parties in 1995, may be relevant to Coeur's impossibility and impracticability defenses. Neither party is precluded from retaining such an expert.

## CONCLUSION

In light of the foregoing:

- The Court GRANTS IN PART and DENIES IN PART Coeur's *Motion for Summary Judgment* at Docket 43 as follows:

---

[106] Docket 91 at 4.

[107] Docket 89 at 9–12.

[108] Docket 89 at 12.

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 28 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 28 of 29

- o Summary judgment is GRANTED to Coeur with respect to the Bad Faith Claim;

- o Summary judgment is GRANTED to Coeur with respect to the Misrepresentation Claim;

- o Summary Judgment is DENIED without prejudice in all other respects.

- The Court GRANTS Coeur's *Motion for Clarification* at Docket 90 as follows:

  - o Expert witnesses on Coeur's impossibility and impracticability defenses shall be identified by each party on or before July 7, 2023, and each party may identify responsible supplemental expert witnesses within 14 days thereafter;

  - o Expert disclosures (reports) on these defenses shall be disclosed by all parties on or before August 11, 2023;

  - o Rebuttal reports shall be disclosed on or before 21 days from service of the original report; and

  - o Expert witness discovery on these defenses (including depositions) shall be completed by September 29, 2023.

DATED this 26th day of June 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 1:21-cv-00021-SLG, *Maverix Metals, Inc. v. Coeur Alaska, Inc.*
Order re Motion for Summary Judgment and Motion for Clarification
Page 29 of 29

Case 1:21-cv-00021-SLG   Document 96   Filed 06/26/23   Page 29 of 29